## PHILLIPS PETROLEUM CO. v. BARTMESS.

No. 27364. Dec. 7, 1937.

Hamilton & Howard, R. H. Hudson, R. B. F. Hummer, and Rayburn L. Foster, for plaintiff in error.

McCoy, Craig & Pearson, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error in an action for damages for injuries to cattle from salt water and oil.

The parties will be referred to as in the trial court.

Defendant took over the control and operation of an oil and gas lease on March 1, 1937, from the Sinclair Prairie Oil Company, an oil and gas lease covering the N.W.¼ of section 27, township N., range 12, E., in Osage county.

Plaintiff was the owner of, or had under lease, certain lands in the vicinity, a part of which adjoined the land above described, which was not separated therefrom by fence or other barrier. He owned a number of cattle which he had pastured on his own land. The land covered by the oil and gas lease of defendant was owned by an incompetent Osage Indian. Plaintiff never obtained an agricultural or grazing lease on said land. At the time defendant took over the operation of the oil and gas lease there were four producing oil wells thereon; at least one of said wells was and had been producing salt water. Near this well the Sinclair Prairie, or its predecessor, the Prairie Oil & Gas Company, had constructed a small salt water pond into which it had drained the salt water from said well. This pond was located on a rather steep hillside at a place where the soil was mixed with rock and gravel. The salt water seeped through the bank and ran down the hillside, where it stood in small pools. Some of it found its way into a small draw or drain which led to a stream of fresh water.

Plaintiff alleged in his petition that he was in the peaceable, quiet, and undisputed possession of a pasture of approximately 400 acres, including the quarter section above described, without objection from any person, firm, or corporation; that during the month of March, 1933, defendant, in violation of section 7969, C. O. S. 1921, caused, allowed, or permitted oil, salt water, and other waste matter to escape from its operations, ponds, and tanks and to flow over the surface of the land, stand in holes and ditches, and enter the fresh water in said pasture used by plaintiff for water supply for his cattle, as a result of which his cattle drank of said poisonous substances causing the death of two head and damages to some 45 other head of cattle, to his damage in the sum of $1,024; that in addition thereto, plaintiff had been put to expense in buying extra feed for said cattle in the sum of $60, and was put to an expense of $50 in moving his herd, all to his damage in the sum of $1,164. In a second cause of action he claimed $500 punitive damages. Defendant's answer was a general denial.

The cause was tried to a jury, resulting in a verdict and judgment based upon the first cause of action in the sum of $880, from which judgment defendant appeals.

Defendant first contends that the trial

court erred in refusing to direct a verdict in its favor upon the grounds that plaintiff's cattle were trespassers upon the land operated by defendant for oil and gas.

To sustain its contention defendant cites and relies, in part, upon Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P. (2d) 389. Here there is no contention that defendant was the owner of the land in question. All it claimed was an oil and gas lease covering the land in question. Plaintiff did not claim an agricultural and grazing lease thereon, but did testify that he had been in possession of, and had pastured, the land since 1927, and that he paid rental therefor. He did not state to whom he paid rental. It is reasonably certain that he did not pay the defendant oil company or its predecessor. Defendant quotes the fifth heading in the Pease Case, 5 P. (2d) 389, prepared by the West Publishing Company. That paragraph is apparently taken from a part of a sentence in the body of the opinion which, in whole, reads:

"To hold that operators could not flow salt water over the surface of land owned by them or leased by them for that purpose, or to deposit same in pools or tanks on their own land, would in many cases render impossible development for oil and gas in fields where salt water is produced."

That does not mean that because an operator holds an oil and gas lease covering a tract of land he may flow salt water over the surface thereof at will. He has the right to use so much thereof as is reasonably necessary, to confine or store salt water from his wells, or he may go to the owner of adjacent or other land and lease from him the right to use same for the purpose of disposing of salt water from his wells. That is why the expression is used, "or leased by them for that purpose". The headnote should be read in conjunction with the opinion.

Peters Petroleum. Corp. v. Alred, 156 Okla. 249, 10 P. (2d) 705, is cited by defendant. In that case the oil company owned a part of the land involved in fee, and had an oil and gas lease and a surface right lease on the other part.

Plaintiff showed neither possession nor right of possession of either tract. Neither Tidal Oil Co. v. Pease, supra, nor Peters Petroleum Corp. v. Alred supports defendant's contention.

Texas Co. v. Mosshamer, 175 Okla. 202, 51 P. (2d) 757, is a case closely allied to the instant case. The only difference is that in the Mosshamer Case, the plaintiff had a surface or grazing lease on the land where his cattle obtained salt water, etc., from defendant's oil wells. Therein it is said:

"It must have been contemplated that there would in some cases be a concurrent possession, and a use of the land for different purposes and by different persons. The statute seeks to give effect to the rights of both parties."

There the oil and gas lessee was held liable to the agricultural or grazing lessee. Here, however, the plaintiff admits that he held no surface right lease, although he was in peaceable possession and paid someone for the grazing rights.

If plaintiff was a trespasser as to the actual owner of the surface rights, it does not necessarily follow that he was a trespasser as against the oil and gas lessee where he in no way interfered with the operations of such lessee.

In 45 C. J. 786, 787, the following is stated as the general rule:

"In order that one may avoid liability for injury to another on the ground that the latter was a trespasser, it is necessary that the injured person should have been a trespasser as against the person sought to be charged with the liability, and the fact that the injured person was a trespasser is not material where his trespass involved no interference with the rights of the person sought to be charged. It has been stated broadly that in order to relieve one from liability on the ground that the injured person is a trespasser, the premises must belong to the person whose negligence is complained of, or such person must have the right of control of the premises."

The rule with respect to trespassing animals is the same. 45 C. J. 787.

The applicable rule is well stated in Reed v. Price, 39 Mo. 442, quoted with approval in Holden v. Lynn, 30 Okla. 663, 120 P. 246, wherein it is said:

"The possession of the plaintiff being conceded, and the defendant claiming no title to the premises or license from the owner to enter, the question is whether evidence of want of title in the plaintiff was admissible. The law has been too long and too well settled to render it necessary to cite authorities in support of the position that possession is sufficient to maintain an action of trespass. In this action the defendant may dispute the plaintiff's possessory right by showing that the title and possessory right are vested in himself or another, under whom he claims, or whose authority he has. But if the plaintiff prove possession merely that will suffice, if the defendant cannot show a superior right in himself or another,

under whom he can justify. It is true the plaintiff must prove such a lawful possession as the defendant had no right to disturb, but any possession is a legal possession as against a wrongdoer."

The plaintiff proved possession and use of the land for some six years. Although his possession may have been wrongful as against the true owners, the defendant is in no position to complain, since it was unable to show or prove its right of control of the premises as to the surface or grazing rights.

It is also contended that the evidence is insufficient to prove that plaintiff's cattle obtained salt water or oil from any source.

It is true that there is no direct evidence that plaintiff's cattle drank salt water. No witness testified that he saw any of the cattle drinking from the pools or small stream into which the salt water escaping from defendant's salt water pond flowed. But there was evidence of circumstances which strongly indicated that the cattle did drink the salt water.

Defendant produced as a witness Dr. D. G. Hiller, nutrition chemist of Oklahoma A. & M. College, who testified concerning a series of experiments made under his supervision, which tend strongly to show that cattle will not drink water containing in excess of 1½ per cent. salt under any circumstances where fresh water is available. That it is necessary to deprive them of fresh water altogether for a period of from six to eight days before they will drink such water. That water containing less than 1½ per cent. salt is not injurious to cattle.

There is evidence that fresh water was available in plaintiff's pasture. But, however strong the testimony of Dr. Heller may appear, the question is still one of fact for the jury.

The jury was not obliged to accept his evidence as a verity and reject all the other circumstances. We cannot say as a matter of law that there was no evidence upon which to base a finding that plaintiff's cattle obtained salt water from the seepage from defendant's salt water pond.

Defendant next contends that the court committed error in admitting evidence over its objection that it had failed to fence its salt water pond.

It may be conceded that an oil operator is not required to fence its salt water ponds, and that evidence of failure so to do is immaterial, but under the evidence and instructions given by the court, error, if any, in admitting such evidence became harmless. There was no evidence whatever tending to prove that plaintiff's cattle obtained salt water from the salt water tank or pond. The court specifically instructed the jury that before a verdict could be returned in favor of plaintiff, the jury should first find that the defendant in its operations permitted salt water to escape from a pond located on said premises to flow over the surface of the land into a draw which contained fresh water which was the water supply for plaintiff's cattle, and that the fresh water therein became poisoned and polluted as a result thereof, and that plaintiff's cattle drank therefrom and sustained injury as a proximate result thereof, and that unless it was so found the verdict should be for the defendant. This in effect took from the consideration of the jury all evidence going to the failure of defendant to fence the salt water pond.

What we have said under the first proposition applies to the contention of error in refusing certain instructions offered by defendant.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN, HURST, and DAVISON, JJ., concur. GIBSON, J., dissents.