GULF REFINING CO. v. CARRUTHERS.

No. 30033. Jan. 13, 1942.

*120 P. 2d 991.*

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C.

L. Billings, and James B. Diggs, Jr., all of Tulsa, for plaintiff in error.

Paul W. Cress (R. J. Shive, of counsel), both of Perry, for defendant in error.

RILEY, J. This is an action commenced by R. W. Carruthers, herein referred to as plaintiff, against plaintiff in error, herein referred to as defendant, to recover damages alleged to have been suffered as the results of defendant's negligence in permitting oil to escape from a pipe line running through the ranch of plaintiff. Plaintiff alleged that 193 head of his cattle drank the water polluted by the oil, and were thereby injured to plaintiff's damage in the sum of $3,900. Defendant denied generally.

This is a second appeal in this action. In the first trial, plaintiff recovered a judgment in the sum of $2,000. On appeal the judgment was reversed for errors in instructions and the cause remanded for a new trial. 185 Okla. 96, 90 P. 2d 407.

The new trial resulted in a verdict and judgment for plaintiff in the sum of $2,500, and defendant appeals.

The facts as to how the oil escaped from defendant's pipe line are stated in the opinion on the former appeal.

On this appeal defendant makes no claim of insufficiency of evidence to show its primary negligence.

The first contention is that there is no competent evidence to show that plaintiff's cattle were injured. This contention cannot be sustained. There is abundant evidence in the record tending to prove that substantially all of the 193 head of plaintiff's cattle that were in the "north pasture" were injured to some extent from some cause. We deem it unnecessary to set out the evidence on this question in detail. It is sufficient to say that there is such evidence.

It is next contended that there is no evidence in the record showing that one single steer ever drank a drop of oil or was in any way injured thereby. Defendant in its brief admits the escape of some oil from its pipe line. The evidence is in sharp conflict as to the amount of oil that escaped. Plaintiff's witnesses estimated the amount as from 1,000 to 1,500 barrels. Defendant's witnesses estimated the amount as not to exceed 22 barrels. In any event a group of 15 workmen spent two days burning the oil, where possible, and skimming and dipping the oil out of the creek. This activity occurred in a pasture where 193 head of plaintiff's cattle had access to the polluted water. No witness saw any of the cattle drink water from the creek during that time.

The evidence, without conflict, shows that the leak in the pipe line, at a point in plaintiff's pasture, occurred about September 15 or 16, 1936. Defendant pumped oil through the pipe line under 600 pounds pressure from about 7 o'clock a. m. to about 3 o'clock p. m., on September 15, 1936. The leak in the line was discovered by defendant's workmen on the morning of September 17th. Oil had escaped and run into a small stream or creek and down the creek a distance of about three-fourths of a mile. At that time plaintiff's cattle were in the pasture near the creek. About 15 head of the cattle crossed the creek while defendant's workmen were repairing the leak in the pipe line. They were driven back, and during that day and the next were kept away from the creek. Fifty-six were taken from the pasture about September 23rd and shipped to the Oklahoma City market and sold on September 24th. The other 137 head were shipped about September 25th and sold on September 28th.

Since no witness testified that he saw any of the cattle drink from the creek when the oil was on the water, plaintiff must rely upon circumstantial evidence to prove the cattle drank oil. It is settled in this jurisdiction, in cases of this kind, the fact that cattle did drink oil or salt water may be established by circumstantial evidence. In Phillips Petroleum Co. v. Bartmess, 181 Okla. 501, 76 P. 2d 352, it was con-

tended that the evidence was insufficient to prove that plaintiff's cattle obtained salt water or oil from any source. In the opinion it is said:

"It is true that there is no direct evidence that plaintiff's cattle drank salt water. No witness testified that he saw any of the cattle drinking from the pools or small stream into which the salt water escaping from defendant's salt water pond flowed. But there was evidence of circumstances which strongly indicated that the cattle did drink the salt water."

Other cases might be cited supporting this rule, but we consider the question well settled.

In this case plaintiff produced a number of qualified witnesses who testified that plaintiff's cattle, on and after September 17, 1935, until they were removed from the pasture, showed a number of symptoms prevalent in cattle that had drunk oil. There is evidence strongly indicating that the cattle in question did drink sufficient oil to cause some injury. It is contended that because one witness for defendant testified that on September 21, 1935, he viewed the premises and inspected plaintiff's cattle and could find no evidence of oil in the excretions, which defendant claims is an ever-present symptom, and because no witness for plaintiff contradicted this testimony, plaintiff's evidence must be considered, as a matter of law, insufficient to establish the fact that any of plaintiff's cattle drank any oil whatever.

This evidence of the witness, the defendant's claim agent, might be considered sufficient to present a conflict in the evidence. Nevertheless, there was left the question of fact for the jury. Defendant cites and relies in part on Pres-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303. But there the evidence was entirely different. In that case plaintiff wholly failed to prove presence of deleterious matter in the water. Here it is proved, in fact admitted, that oil had escaped and was present on the water to which plaintiff's cattle had access.

It is fair to assume that the oil escaped during the time the line was being used on September 15th. Plaintiff's cattle then had access to the oil for about two days. Thereafter they were found showing many of the symptoms of oil poisoning. There is no evidence of any other probable cause. Under the record, we cannot say, as a matter of law, that there is no competent evidence tending to prove that plaintiff's cattle drank oil which had escaped from defendant's pipe line.

It is next contended that there is no competent evidence to show the true measure of plaintiff's damage.

We do not understand that a plaintiff in this kind of an action is required to prove the "measure" of damages. The law fixes the measure of damages.

The burden then was upon the plaintiff to prove the injury, the cause, the nature and extent thereof, and its effect on the value of the injured cattle.

There was evidence going to the market value of the cattle immediately before and immediately after the injury. Plaintiff testified in substance that the cattle in question were of the average value of about $70 per head before the alleged injury, and from $50 to $51 per head after the injury. C. S. Thompson, an experienced cattleman, testified that he saw all the cattle in the north pasture a few days before the date of the alleged injury; that he saw 137 head about September 23rd or 24th; that they appeared to have shrunk in weight something like 100 pounds per head. In this connection he testified:

"A. Well, those cattle had taken such a shrink, and the hair was turned the wrong way, on the cattle; and I think that the cattle had lost a hundred pounds since I had seen them before; that was my best judgment on the cattle the day I seen them in the stockyards at Marland. Q. You mean a hundred pounds apiece? A. Per head."

He valued the entire 193 head of cattle in the south pasture, before the injury, at $70 per head, and the 137 head he

saw after the injury at from $45 to $50 per head at Marland.

There was ample evidence as to the value of the cattle immediately before and immediately after the alleged injury so as to present a proper measure of damages.

Defendant presents a table or calculation which it claims demonstrates to a mathematical certainty, from the evidence as a whole, that plaintiff's damages could not have been to exceed the sum of $1,229.47. In this computation defendant asserts that the figures show that shrinkage on plaintiff's cattle could not have been more than 42 pounds per head. In making up this table defendant takes into consideration 54 head of cattle that were in the south pasture and some of which were not shipped and sold until October 28th. The jury was entitled to take into consideration all the evidence in arriving at the verdict. It cannot be said that there was no competent evidence to support the verdict.

It is next contended that the trial court erred in admitting in evidence a summary or calculation by plaintiff as to his theory of how the calculations should be made in determining the amount of plaintiff's damages. It is contended that this exhibit was incompetent because it included the weights and net sale price of plaintiff's cattle sold from the south pasture as compared with the weight and net sale price of the 193 head alleged to have been injured. One of the principal differences between the two summaries is that the one admitted on behalf of defendant included 54 head of cattle which were not placed in the herd of uninjured cattle until after the alleged injury, while the summary offered by plaintiff included only the 152 head of uninjured cattle sold from the south pasture. This was offered apparently to offset the claim of defendant that the loss in weight of the injured cattle could have been no more than 42 pounds per head.

As stated by the trial court when passing upon the question, this summary was admissible, like the one offered by defendant, as a calculation of the witness for whatever aid it might be to the jury.

Another objection presented to plaintiff's summary is that it contained a double charge of one item of $226.98 extra feed, fed the 137 head of cattle held in the pens at Oklahoma City in an effort to build up their weight and general appearance before offering them for sale.

Defendant has thoroughly demonstrated, and the evidence shows, that plaintiff was in fact claiming twice for this item. It was included in the expense of marketing the cattle. Therefore, the verdict may be considered as excessive to the extent of $226.98. Defendant contends that the verdict, under any view of the evidence, is excessive to the extent of $1,270.57, but with this contention we cannot agree.

It may be that the jury disallowed the item of $226.98 for extra feed shown by plaintiff's computation, but it is possible that the item was twice counted. It does not follow that the judgment must be reversed because of this possible error in the amount of recovery. We find no other substantial error.

Plaintiff will be allowed ten days to remit, in writing, the sum of $226.98. If he does so within said time, the judgment for the remainder will be affirmed. If the remittitur is not so made, the judgment will be reversed.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, C. J., and ARNOLD, J., absent.