KAW CITY v. JOHNSON.

No. 33356. July 5, 1949.

Rehearing Denied Sept. 13, 1949.

*209 P. 2d 699.*

Irving D. Ross and David Ross, of Ross & Ross, of Newkirk, for plaintiff in error.

C. L. Armstrong, of Ponca City, and W. W. Rodgers and John H. Gurley, of Rodgers & Gurley, both of Blackwell, for defendant in error.

LUTTRELL, J. This is an action for damages for wrongful death, brought by W. M. Johnson, administrator of the estate of Milton Oliver Johnson, as plaintiff, against the city of Kaw City, a municipal corporation, defendant. The trial court overruled defendant's demurrer to plaintiff's evidence, overruled defendant's motion for an instructed verdict at the close of all the evidence, and submitted the cause to a jury, which returned a verdict for plaintiff. Defendant appeals.

Essential facts established by the evidence are that the defendant was furnishing light and power to a small town nearby and that in order to do so it maintained two lines or wires carrying 2,300 volts of electricity across a bridge over the Arkansas river. The wires ran from poles on each side of the bridge across the top of the bridge, which crossed the Arkansas river from north to south and was a part of the public highway. The wires of defendant ran across the top of the bridge close to the west side of the bridge, the nearest point of said location to the topmost beam of the westerly superstructure of the bridge being some eighteen inches. The wires were not so insulated as to protect any person who touched them from the high voltage they carried, but were covered with a weatherproofing insulation, which in some places had worn away until the wires were bare. There were no warning signs on the bridge advising the general public that the wires were dangerous. The top of the bridge across which the wires ran was some seventeen feet five inches from the floor of the bridge. The bridge was of steel construction and the outside beams of the superstructure slanted upward for a little way and then ran straight across. These beams were some twelve inches in width. The slanting portion had rivet heads on each side so that an active person could clamber up it and thus get to the top of the bridge.

From the evidence it appears that on July 18, 1945, the deceased, Milton Oliver Johnson, an active and intelligent young man nineteen years of age, attended a picnic or party held on a sandbar near the bridge. The party was attended by numerous young people. When it broke up the deceased and one or two other boys started to climb up the sloping end of the outside beams of the superstructure in order to get to the top of the bridge. Deceased was warned that it was dangerous and was requested by one or two persons not to climb up to the top of the bridge, because he might fall therefrom and be injured. He was also advised that electric wires ran across the bridge. Notwithstanding these warnings he climbed to the top of the bridge and worked his way toward the center for about ten feet, apparently by straddling the outside beam of the superstructure and pulling himself along. He went up the west beam of the bridge from the north, but after he stopped his progress across the bridge he turned so that he was facing north. After he had made this turn it appears from the uncontroverted evidence that he touched, or attempted to touch, the electrical wires of defendant, in order, as he stated, to dim the lights in Kaw City. From the testimony of several eyewitnesses, some of whom were produced by plaintiff, it appears that he twice touched the wires, causing sparks or flares to be emitted therefrom, without apparent injury to himself. He then touched the wires a third time and was pulled across them by the electric current. He lay across the wires until they broke apart, and he then fell to the floor of the bridge. He died the next morning about 9:30 o'clock. Several of the boys and girls who were present testified that they saw him slap at the wires or put out his hand to touch them, and one witness, who was part way up the bridge on the east side, testified that when he touched them the first time he said "hot". This so alarmed the witness that he immediately jumped off the superstructure to the floor of the bridge in order to get to a place of safety. He also testified that when the deceased touched the wires a second time he repeated the word "hot". The deceased had lived in Kaw City until he was sixteen years of age, when his parents removed therefrom to Wyandotte. Deceased was of at least average intelligence, and had graduated from high school in the spring of 1945.

A number of electrical experts testified that the insulation on defendant's wires was a poor quality; that they should have been laid across the bridge in conduits so as to protect anyone on top of the bridge from danger. Several witnesses testified that they had seen boys climbing around on the bridge

at various times, and one witness testified that he had advised the superintendent of defendant's electrical plant that he had seen this, and that there was danger if they came in contact with the wires. This witness testified that the boys he saw were not on top of the bridge, but were climbing around on the superstructure. An undertaker, who went to the scene of the accident with an ambulance and took deceased to Ponca City to the hospital, testified that when he reached the scene of the accident deceased was lying on the bridge; was conscious, and that he called the witness by name and had a conversation with him there on the bridge. Relating the conversation, he testified as follows:

"A. Well, it was very short, he knew me by name—I asked him, I said, Son, what in the world happened? He told me he was up on the bridge and had struck the line to see if it was hot, or see if it was alive and that when he did that the fire flew between him and the wire and the lights dimmed in town, he said he struck it again, the fire flew and the lights dimmed down town; he said the third time he hit it, why, it grabbed him, that is all he ever said."

Plaintiff's petition alleged that defendant was negligent by having its wires laid across said bridge without proper insulation; negligent in failing to have warning signs warning the deceased and other of the presence of wires on the bridge after being notified that children were climbing on the bridge and playing near the wires. Defendant in its answer denied that it was guilty of negligence which resulted in the injury and death of deceased; alleged that the injury and resulting death of deceased were caused wholly through his negligence and want of due care; pleaded contributory negligence, and further alleged that the contact of deceased with the wires was due entirely to his own reckless acts and not through any accidental means.

Defendant makes several contentions for reversal, asserting that deceased was a trespasser to whom it owed no duty except to refrain from wantonly and willfully injuring him, and that therefore it was not negligent; that even if it were negligent, its negligence was not the proximate cause of the injury, but that the injury was due solely to the negligent and wrongful acts of the deceased. Plaintiff urges that the defendant was negligent in maintaining its lines without adequate protection, especially when it had knowledge and warning that children played around and climbed upon said bridge, and that the evidence does not show that the deceased had knowledge of the high voltage carried by said lines.

We are impelled to the conclusion that the deceased in this case occupied the position of a trespasser. This for the reason that he had no business upon the superstructure of the bridge, and was not there by the implied invitation of either the county, the owner of the bridge, or the defendant, which was using the bridge with the consent of the county.

In City of Shawnee v. Drake, 69 Okla. 209, 171 P. 727, we said that one who went upon the premises of another in a common interest or to a mutual advantage would be regarded as being upon the premises upon the implied invitation of the owner.

In Texas, O. & E. Ry. Co. v. McCarroll, 80 Okla. 282, 195 P. 139, we said that to make one a licensee upon the premises or property of another, it must be shown that he was upon the premises by the permission or authority of the owner or his authorized agent.

In Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 P. 1, we said that a landowner owes to either a trespasser or a mere licensee only the duty in respect to safety from dangerous artificial conditions on the premises to not injure him intentionally or wantonly.

In the instant case there is not a scintilla of evidence indicating that deceased was upon the superstructure of the bridge, either upon the express or implied invitation of the owner of the bridge or of defendant, nor was he

there due to any permission or authority from the owner of the bridge or defendant, or any authorized agent of either of them. He had no business of any nature upon the bridge, but went upon it for his own pleasure without the knowledge or consent of the owner of the bridge or of defendant.

In Kent v. Interstate Public Service Co. (Ind.) 168 N. E. 465, the court in passing upon a somewhat similar situation, in which a fourteen year old boy was killed while upon the superstructure of a bridge, which was part of a public highway, and across which the electric wires of the defendant were strung, said:

"The undisputed evidence shows that boys were not accustomed to resort to the bridge in question by reason of any attraction in the property of appellee nor of any feature connected therewith, but rather to clamber on said bridge in pursuit of birds' nests, which were not matters for the existence of which appellee was in any manner responsible. Whatever may have been the boy's motive in climbing to the girder, it is certain that he had no legitimate business up there. He was simply there without right. When he left the floor of the bridge, he became a trespasser, to whom no one owed a duty except not willfully to injure him."

In Graves v. Washington Water Power Co., 44 Wash. 675, 87 P. 956, where a fifteen year old boy climbed up the pier of a bridge, and was injured by coming in contact with wires of the defendant running in close proximity to the superstructure of the bridge, the court said:

"Was it ever contemplated that such a use should be made of the piers of this bridge by the general public? We apprehend not. The bridge was constructed for the purpose of furnishing the public a means of crossing a goodly sized river. It was intended that the public should walk or ride upon the roadway at the top of said bridge. The lattice work upon the sides of these piers was not intended to constitute ladders or furnish means of access to or from the top of the bridge. The public was not invited nor expected to use such lattice work for such a purpose. No one, other than an employee or agent of the city intrusted with some duty in connection with the inspection, supervision, care, or repairing of said bridge, would have any authority to climb up or down said lattice work. This being true, it follows that respondent as one of the general public had no authority justifying his presence at the place where he was injured. It is not pretended that he was an employee or agent of the city, or that he had any authority therefrom to be there. He was not even a licensee, but was a mere trespasser."

In New York, N. H. & H. R. Co. v. Fruchter, 260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173, an eight year old boy climbed to the top of a bridge, built by New York City and maintained by the railroad company, and then climbed upon a latticed post some six feet high and touched an electric wire, inflicting serious injury upon himself. The Supreme Court held that if the boy had been an adult he could not have recovered; that there was no sufficient evidence from which it could be concluded that the railroad company, either directly or by implication, invited or licensed him to climb to the point where he touched the wire, and held that the railroad company's motion for an instructed verdict should have been granted.

In Anderson v. Kansas City Public Service Co., 127 Kan. 375, 273 P. 397, a thirteen year old boy, while crossing a viaduct with a companion, climbed the steel structure of a span of the viaduct, threw up one of his hands which came in contact with an electric line, and fell to the floor of the viaduct, sustaining severe injuries. The court followed the Fruchter case, supra, and held that the railroad company, which maintained the wires and frame work of the viaduct, could not be considered liable upon the theory of license or invitation.

In the instant case, the uncontradicted evidence establishes that defendant did not in any way willfully or wanton-

ly injure the deceased, but that even after deceased discovered that the wires of defendant located on top of the bridge superstructure were charged with electricity, he continued to slap or touch or tamper with said wires until he was fatally injured. This conduct on his part was a willful and wanton disregard for his own safety, since the dangers attendant on touching wires charged with electricity are a matter of common knowledge to persons of his age and intelligence, and he had been warned prior to going upon the superstructure of the bridge that the wires of defendant were located thereon.

While in City of Altus v. Wise, 193 Okla. 288, 143 P. 2d 128, we held that companies engaged in the business of conducting electricity over high voltage wires were bound to exercise much greater precaution than if the property were of a less dangerous character, in Oklahoma Gas & Electric Co. v. Wilson, 172 Okla. 540, 45 P. 2d 750, we held that such a company was not an insurer against injury. To hold that such a company owed to every trespasser the duty to protect its wires by insulation or other methods at all points so as to preclude the possibility of injury would make it an insurer against injury as to the general public. This would be an extension of liability contrary to the settled rule in this state.

The Oklahoma cases cited by plaintiff, La Dow v. Oklahoma Gas & Electric Co., 28 Okla. 15, 119 P. 250; Southwestern Light & Power Co. v. Fowler, 119 Okla. 244, 249 P. 961; Duncan Electric & Ice Co. v. Chrisman, 59 Okla. 67, 157 P. 1031; and Shawnee Light & Power Co. v. Sears, 21 Okla. 13, 95 P. 449, are based upon facts so different from those in the instant case as to be of little value. In the two cases first above cited, the lines of the electric company involved, in addition to being improperly insulated, had been placed upon poles which brought them within such close proximity to telephone lines as to injure employees of the telephone company repairing or removing lines. In Shawnee Light & Power Co. v. Sears, supra, the plaintiff, a child aged eleven, was walking on a public street and came in contact with a guy wire supporting one of the defendant's poles which, due to some fault on the part of defendant, had become charged with electricity. In Southwestern Light & Power Co. v. Fowler, supra, the negligence of the defendant consisted in leaving an old telephone wire, which it had attached to one of its poles, so that the breaking of one of the high voltage wires caused it to come in contact with the telephone wire, caused the telephone wire to be charged with electricity whereby it conveyed the electricity to a barbed wire fence surrounding a house. In that case the court held that the negligence consisted in permitting a condition which sent the deadly current out of its usual zone of traffic.

The only case referred to by plaintiff which is similar to the instant case is Parsons v. Appalachian Electric Power Co., 115 W. Va. 450, 176 S. E. 862, 100 A. L. R. 615. In that case the court did not consider the status of the eleven year old boy who was injured, or determine whether he was a trespasser or licensee or otherwise, but simply held that contributory negligence was not presumed in the case of a boy of that age, and that where the company had notice that children habitually climbed upon the superstructure of the bridge, it must exercise a high degree of care to prevent them from being injured by the current carried in its wires. In Nelson v. Branford Light & Power Co., 75 Conn. 548, 54 At. 303, the boy injured had climbed upon a part of the superstructure of the bridge in order to dive into the river. The evidence showed that boys habitually used the piers and buttresses of the bridge for diving and that this was apparently with the consent and approval of the city authorities. The court in that case did not consider whether the boy was a trespasser, licensee or invitee, but applied the rule of law applicable to invitees.

These authorities, in our judgment, are not sufficient to support the imposition of a duty upon the defendant in excess of that duty which it owes to a trespasser, where the evidence is sufficient to establish that the deceased clearly occupied that status at the time he received his injury, and that his injury resulted from a reckless disregard of his own safety after he discovered that the wires of defendant were charged with electricity. The motion for directed verdict made by the defendant at the close of all the evidence should have been sustained.

Reversed, with directions to render judgment for defendant.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, GIBSON, HALLEY, JOHNSON, and O'NEAL, JJ., concur. CORN, J., dissents.

