**John and Evelyn WOODIS, Parents and Next Friends of John Henry Woodis, Jr., Plaintiffs-Appellees,**

v.

**OKLAHOMA GAS AND ELECTRIC COMPANY, a corporation, Defendant-Appellant.**

No. 58815.

Supreme Court of Oklahoma.

July 23, 1985.

S. Daniel George, Sallisaw, for plaintiffs-appellees.

Andrew Wilcoxen, Wilcoxen & Cate, Muskogee, H. Duane Stratton, Steven E. Moore, Oklahoma City, for defendant-appellant.

Jay M. Galt, Looney, Nichols, Johnson & Hayes, Oklahoma City, for amicus curiae.

LAVENDER, Justice:

The sole question Oklahoma Gas and Electric Company (OG&E) raises for our consideration in this appeal from a wrongful death judgment is whether the trial court erred in refusing to instruct the jury that the decedent was a trespasser on its transmission-line tower and that the only duty of care it owed him was not to injure him wilfully or wantonly. We conclude that under the facts adduced and the law applicable thereto OG&E was not entitled to the refused instruction and affirm the judgment.

The deceased was a fifteen-year old boy who climbed to the top of an unlighted transmission-line tower shortly after midnight. The tower was fifty feet high and stood in a field owned by a third party who is not a defendant in the case. The boy was killed by electricity that arced toward him from the high-voltage line or insulator when he reached the crossbar near the top of the tower.

The parents of the deceased boy brought this negligence action against OG&E on the theory that the electric company had breached the "high degree of care" it owed to their son by not properly maintaining its transmission-line tower. Specifically, the parents alleged and sought to prove that OG&E had violated safety standards set by the National Electrical Safety Code and had failed to take other safety precautions that were required under the circumstances. The parents contended that OG&E's failure to make the tower more difficult for their son to climb had caused his death.

OG&E defended on the grounds that it had complied with the applicable safety code and that recovery was precluded by the decedent's status as trespasser and by his contributory negligence. The trial court refused to instruct the jury that the boy was a trespasser on OG&E's transmission-line tower and that the only duty of care OG&E owed the entrant was not to injure him wilfully or wantonly. OG&E claims error in this refusal of its requested instruction.

The jury returned a verdict for the parents, with an attribution of thirty-five percent of negligence to the deceased and sixty-five to OG&E.

## I.

We first consider whether the decedent-entrant occupied the status of a trespasser at the time of his electrocution.

It is undisputed that OG&E owned a perpetual right-of-way easement across the land of a third party owner, upon which it maintained electric transmission towers and lines including the tower climbed by decedent; that it had possession of the towers and lines, and, by virtue of its easement, the right of possession of both.

■ We need not address the question of whether decedent was a trespasser upon real property, the easement, for the reason that we here determine that decedent occupied the status of a trespasser upon personal property of OG&E, i.e., its tower and wires.

Trespass to personal property is delineated in 75 Am Jur 2d Trespass § 9 as follows:

"Trespass to personalty is the intentional use of or interference with a chattel which is in the possession of another, without justification. Any unlawful interference, however slight, with the enjoyment by another of his personal property is a trespass. ..."

*Restatement of Torts, 2nd ed,* further elucidates:

"§ 215.  Definition of Possession of Chattel:

"In the Restatement of this Subject, a person who is in 'possession of a chattel' is one who has physical control of the chattel with intent to exercise such control on his own behalf, or on behalf of another."

"§ 217.  Ways of Committing Trespass to Chattel:

"A trespass to a chattel may be committed by intentionally

"(a) dispossessing another of the chattel, or

"(b) using or intermeddling with a chattel in the possession of another."

As a part of the "Comment" following § 217, it is stated:

"e.  Physical contact with Chattel:

" 'Intermeddling' means intentionally bringing about a physical contact with the chattel.  The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another, as when he beats another's horse or dog, or by intentionally directing an object or missle against it, as when the actor throws a stone at another's automobile or intentionally drives his own car against it. ..."

Here the unauthorized entry by deceased upon the tower and wires in the possession of OG&E placed the deceased in the statue of a trespasser upon OG&E's transmission tower and wires.

In *Kaw City v. Johnson,* 202 Okl. 6, 209 P.2d 699 (1949), we held that the owner of electric light and power wires owed no duty toward a trespasser thereon except to refrain from injuring him intentionally or wantonly.  In *Kaw City,* supra, a nineteen year old boy climbed a county owned bridge on top of which Kaw City owned and maintained power wires with the consent of the county.  The wires were bare in spots and in places covered with a weather insulation.  The boy grabbed the wires twice to dim the city lights and upon grabbing them for the third time, received a jolting shock which caused him to fall to the bridge floor, and his death resulted. While the Court did not specifically address the fact that the trespass was on *personal property,* it was in fact a trespass upon personal property and the traditional duty-to-trespasser rule was applied.

■ Oklahoma appears to be committed to the view that liability in negligence varies with the status of the entrant complaining of injury, and applies the traditional rule as to trespassers as expressed in *Kaw City v. Johnson,* supra.  *Sutherland v.*

*Saint Francis Hospital, Inc.,* Okl., 595 P.2d 780 (1979).

## II.

■ We next consider whether a violation of the provisions of the National Electrical Safety code constitutes negligence per se and a breach of duty on the part of the electric company owed to the general public, including trespassers, through the invocation of a *police power* regulation. We answer in the affirmative.

There is substantial evidence in the record to support a jury finding of a violation of the National Electrical Safety Code of 1941 in that the lowest rung of the ladder on OG&E's transmission tower was less than 6½ feet from "the ground, *or other readily accessible place"* as forbidden by the code. (Emphasis added). The jury was instructed that a violation of the code was negligence per se, and the jury was further instructed:

"An electric power company in using an easement or right-of-way for its poles wires and appliances in conducting its business is required to exercise the highest degree of care to maintain in good condition and render its business safe, and to use that degree of care, caution and circumspection in keeping with the dangerous character of its business."

"In *Rotramel v. Public Service Company,* Okl., 546 P.2d 1015 (1976), we held that an electric company "transporting and selling electricity for profit, a known deadly and dangerous though useful product, owes a greater degree of care and precaution in its use than that of property of a less dangerous character," and we further held that power companies are required to exercise the *highest degree* of care and to maintain in the best possible condition the best appliances known to science, to render its business safe, and to use a degree of care, caution and circumspection in keeping with the dangerous character of its business."

In *Rotramel,* we further considered whether compliance by a power company with the National Electrical Safety Code, as required by order of the Corporation Commission, exculpated an electric company from a charge that it was negligent in maintaining uninsulated high voltage lines close to a metal building where it knew or should have known that ladders would be used in the maintenance of the building which might come in contact with the uninsulated wires. We there held that compliance with the National Electrical Safety Code is not conclusive evidence of the electric company's exercise of due care, "but only one factor to be considered." *Rotramel,* is distinguishable from the case at bar, in that compliance with the code was sought as a shield, whereas, here, noncompliance is sought as a sword.

In the case of *Langazo v. San Joaquin Light & Power Corporation,* 32 Cal. App.2d 678, 90 P.2d 825 (1939), a duty to remove an abandoned telephone line which became charged with electricity was determined to be a violation of an order of the railroad commission, the purpose of which order was to remove a hazard to "life or property." There the Court said (832):

"The cases which support this rule (violation of a statutory duty with respect to the condition of the property) are based upon the fundamental concept that the question of the status of the party injured cannot be raised, for the reason that the law is a police regulation designed to protect the public." (Citations omitted).

\* \* \* \* \* \*

"The important thing is that there are statutes such as we have mentioned ... and these statutes usually bear the aspect of police regulations for the protection of the public relative to matters with which the public contact is commonly through individuals as to which the individuals are entitled to assume that the law has been observed. (Citations omitted). The benefits to be derived from its performance inure to the public through the added safety assured to individual

person and property, and can effect the public in no other way. That the failure to observe the requirements of such a statute will, if the proximate cause of injury, support an action even by a trespasser is sustained by an abundance of authority." (Citations omitted).

The distinction between the trespasser-status-liability determination on the part of an ordinary landowner as against the negligence claim of a trespasser on the one hand, and the trespasser-status-liability determination on the part of the owner and operator of high voltage electric lines who has violated a police power safety statute or regulation as against the negligence claim of a trespasser on the other hand is illustrated in the case of *Norris v. City of Miami*, Fla. App., 367 So.2d 1038 (1979). There an independent contractor (plaintiff-appellant) was engaged by a third party to trim trees located on property owned by the City of Miami. The plaintiff had failed to obtain a permit from the city and occupied the status of a trespasser as to the city. The plaintiff sustained an electrical shock when a severed tree limb came into contact with the electric company's overhead power lines which were alleged to be negligently camouflaged by foliage and tree growth.

The Florida Court said (1040): "Thus, by appellant's failure to receive permission of the landowner (City of Miami) to enter upon the property and cut the trees (via a permit) and his awareness of the fact that the trees were not located on the Cohn property, appellant was clearly a trespasser as to the City of Miami. ... As to the precarious status of the trespasser-appellant, the City owed no greater duty than to avoid wilful and wanton conduct toward him and, upon discovery of his presence, to warn him of known dangers not open to ordinary observation." (Citation omitted).

However, as to the liability of the power company, the Court took a different view (1042): "Thus, it would appear *sub judice*, that as long as Florida Power & Light could have reasonably anticipated appellant's presence on the City of Miami right-

of-way, its duty to appellant-trespasser was as great a duty as must be exercised by an electric company to the general public. (Citation omitted). While this high degree of care expressed in [Florida Power & Light Co. v.] *Bridgeman*, [133 Fla. 195, 182 So. 911 (1938)] does not raise an electric company to the level of an insurer against all possible accidents (Citation omitted), it does demand that an electric company guard against occurrences which can reasonably be anticipated by the utmost foresight."

■ Thus, where a violation of a police power regulation has been invoked by the electric company's failure to comply therewith, the traditional rules as to a claimant occupying a trespasser status do not apply, and the issue becomes one of whether the violation of the police power statute or regulation was the proximate cause of the claimant's injuries.

While foreseeability of a trespass was not involved, the foreseeability of an intervening cause was present and considered in *City of Altus v. Wise*, 193 Okl. 288, 143 P.2d 128 (1943). We said (131): "Companies engaged in the business of conducting electricity over high voltage wires are bound to exercise much greater precautions in its use than if the property were of a less dangerous character. (Citations omitted). They, are, therefore, bound to anticipate more remote possibilities of danger."

In *Keel v. Titan Construction Corporation*, Okl., 639 P.2d 1228 (1982), this Court said (1232):

"In *Lisle v. Anderson* [61 Okl. 68, 159 P. 278 (1916)], we held: 'Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehand that, as the natural and probably consequences of his act, another person ... will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises ...' (Footnote citations are omitted).

"The requirement that before one may become liable for his tortious injury to another, the injury complained of must have been reasonably foreseeable to the

tortfeasor is firmly ensconced in the Oklahoma law. (Footnote citations are omitted). And, as we said in *Atherton v. Devine* (Okl., 602 P.2d 634 (1979), supra: 'Causation traditionally lies within the realm of fact, not law. In an action for injuries caused by the defendant's negligence, it is a jury question whether the injurious consequences resulting from the negligence could have reasonably been foreseen or anticipated. ... Foreseeableness becomes a question of law for the court only when one reasonable conclusion can be drawn from the facts.' "

AFFIRMED.

DOOLIN, V.C.J., and HODGES, HARGRAVE and WILSON, JJ., concur.

KAUGER, J., concurs in judgment.

SIMMS, C.J., concurs in part, dissents in part.

OPALA, J., dissents.

SUMMERS, J., disqualified.

OPALA, Justice, dissenting.

In this wrongful death action the court pronounces that an electric power generating company [OG&E or company] owes the *highest degree of care* to one who, as a trespasser upon the land not owned by the company, was electrocuted while climbing the company's transmission-line tower. I cannot join its opinion.

The deceased, a fifteen-year old boy, climbed upon an unlighted OG&E transmission-line tower shortly after midnight. The tower was fifty feet high and stood in a field owned by a third party who was not involved in this litigation.[1] The boy was killed by electricity that arced toward him from a high-voltage line or insulator when he reached the crossbar near the top of the tower.

The boy's parents brought this negligence action against OG&E. They alleged that the company had failed to exercise the "high degree of care" it owed to their son by not properly maintaining its transmission-line tower and by its breach of certain mandatory safety standards. OG&E countered that it had complied with the applicable safety code, and that recovery was precluded both by the decedent's status as trespasser and by his contributory negligence.

The trial court *refused* to instruct the jury the boy was a trespasser on OG&E's transmission-line tower and the *only* duty of care owed him by OG&E was not to injure him wilfully or wantonly. Judgment was rendered below on a verdict for the parents, with an attribution of thirty-five percent of negligence to the deceased and sixty-five to OG&E. OG&E's *single claim of error* is the trial judge's refusal to give its requested instruction on the decedent's trespasser status.

Although, in my view, OG&E's requested charge did not correctly state the law that spells out its duty toward the decedent, the instructions given by the trial court are nonetheless fraught with error.[2] Where, as here, a decisive issue is formed by the pleadings together with evidence adduced at trial, and is called to the attention of the court by a requested charge, the court has a duty, *on its own motion*, to set forth the rule of law that governs the tendered issue.[3] The trial court's error in informing the jury of the correct standard of care

---

1. OG&E has but an easement in the *locus in quo* —the land on which the fatality in suit occurred. Easements are nonpossessory estates in the land of another. Restatement of Property § 450, comment (b) at p. 2903; *Beetschen v. Shell Pipe Line Corp.*, 363 Mo. 751, 253 S.W.2d 785, 786 [1952].

2. The instruction requested by OG&E stated: "You are instructed that the Plaintiffs' Decedent, John 'Bo' Woodis, was a trespasser on the tower of the O.G.&E., and the only duty O.G.&E. owed to the deceased was to avoid wilfully or wantonly injuring him."

3. *Mason v. McNeal,* 187 Okl. 31, 100 P.2d 451, 452–453 [1939], cited in *McCorkle v. Great Atlantic Ins. Co.,* Okl., 637 P.2d 583, note 3 at 586 [1981]; 12 O.S. 1981 § 578; *Shelton v. Tapley,* Okl., 329 P.2d 672, syllabus [1958].

owed by OG&E doubtless prejudiced the company's defense posture.[4]

Section 386 of the Restatement (Second) of Torts provides, in this case, *the sole basis* upon which tort liability may be imposed on OG&E, *qua* electric transmission company, for injury or death of an uninvited and unauthorized entrant upon its dangerous facility constructed upon the land of another. The critical components of recovery authorized under § 386 were neither tendered by the parties in their requested charge nor included in any of the court instructions.[5]

Section 386 fashions neither an "academic construct" nor a *new* norm of liability. It draws its essence—as other sections of the Restatement do—from pertinent appellate pronouncements[6] on facts similar to those before us. Section 386 embodies the American common-law norms that apply under the circumstances of this case. If OG&E's negligent conduct did fit the basic

criteria of the § 386 tort liability—because OG&E had created, *on the premises of another*, an artificial condition—here, a transmission-line tower—which it should have recognized as involving an unreasonable risk of harm to persons who might come upon the land and be imperiled by the dangerous condition,[7] OG&E may, indeed, be answerable in damages *to one like the decedent who was a trespasser vis-a-vis the landowner as well as an unauthorized entrant on OG&E's tower. In short, for § 386 purposes the decedent's status on the land and on the tower was immaterial. The duty owed by OG&E did not depend on decedent's status but on the elements of § 386.*

Because the single inference to be drawn here from the undisputed facts in the record is that the decedent was indeed a trespasser vis-a-vis the landowner—or, as I prefer to say it in this case, an unauthorized and uninvited entrant both on the land and the tower[8]—it was incumbent

4. *Pacific Ins. Co. of New York v. Frank,* Okl., 452 P.2d 794, 797 [1969].

5. Restatement (Second) of Torts, § 386, provides: "Any person, *except the possessor* of land or a member of his household or one acting on his behalf, who creates or maintains upon the land a structure or other artificial condition which he should recognize as involving an unreasonable risk of physical harm to others upon or outside of the land, is subject to liability for physical harm thereby caused to them, *irrespective of whether they are lawfully upon the land,* by the consent of the possessor or otherwise, *or are trespassers as between themselves and the possessor."* [emphasis supplied]

6. For a recent application of § 386, see *Escobedo v. Ward* 255 Or. 85, 464 P.2d 698, 701 [1970].

7. This is the *only* theory of tort liability on which the claim may be rested.

8. I do not agree with the court that the decedent may be classified *as a trespasser vis-a-vis OG&E.* By varying the duty of care applicable to the three categories of entrants—trespasser, licensees and invitees—the common law affords the *land occupier*—a protected class of yore—a *form of diminished responsibility in negligence* for harm occasioned by defects in the premises. Neither historical antecedents nor modern policy considerations militate in favor of *extending* the common law's trichotomous division of entrants to now water down the tort liability of

non-possessors, such as OG&E in this case. See Marsh, The History and Comparative Law of Invitees, Licensees and Trespassers, (pt. 1 and 2), 69 L.Q.Rev. 182, 359–361 [1953]. Oklahoma has refused to apply the traditional occupier's immunity rule to a defendant other than the occupier. See e.g., *Phillips Petroleum Co. v. Bartmess,* 181 Okl. 501, 76 P.2d 352 [1937], where the defendant, an owner of an oil lease, was held liable to an adjoining landowner whose cattle trespassed and were poisoned by ponds polluted by the defendant's operations, and *Earl W. Baker Utilities Co. v. Haney,* 203 Okl. 91, 218 P.2d 621, 623–624 [1950]. For a discussion of the occupier distinction, see Hughes, Duties to Trespassers: A Comparative Survey & Revaluation, 68 Yale L.J. 633 [1959] and Restatement (Second) of Torts, § 386.

Section 386 of Restatement (Second) of Torts reflects the *common law's rejection* of the notion that the owner of a dangerous facility upon *the land of another* may claim the *occupier's shield* from general negligence. The distinction between liability of occupiers and that of non-possessors is well articulated in *Ireland v. Complete Machinery & Equipment Co.,* 174 Misc. 91, 21 N.Y.S.2d 430 [1940], where § 386, Restatement (Second) of Torts, was under consideration. This section, which governs liability of nonpossessors [owners of nonpossessory interests in land] for conditions upon the premises "involving any unreasonable risk of physical harm to others", applies to *all entrants,* "irrespective of whether they are lawfully upon the

upon the trial court to instruct the jury, in accordance with the § 386 requirements, that the highest degree of care was not applicable. That standard may be claimed against an electric power transmission or generating company *only* by one who does occupy the status of an *invitee or licensee vis-a-vis the landowner or the facility operator.*[9]

Although in view of § 386, OG&E could not defeat recovery by invoking the decedent's trespasser status vis-a-vis itself or the landowner,[10] it was clearly entitled to an ordinary-degree-of-care charge. Plaintiffs' recovery for decedent's wrongful death can be rested here *only* on OG&E's § 386 tort liability for breach of ordinary care. The jury was not so instructed. It was charged that OG&E owed "the highest degree of care" to one who admittedly was neither a licensee nor an invitee in *the locus in quo.*

In short, I cannot accede to the court's holding that OG&E, *qua* power-transmission company with a facility constructed upon the land of another, *owes the highest degree of care to an unauthorized entrant on its tower and a trespasser vis-a-vis that land's owner who proves OG&E's noncompliance with some police power regulation.* I would hold that (1) OG&E's liability here is governed exclusively by the terms of § 386, Restatement (Second) of Torts and (2) because the decedent was not a licensee or invitee in the *locus in quo,* but an unauthorized and uninvited entrant, OG&E owed him, under the standards of § 386, no more than ordinary care.

---

land ..." In *Ireland* a hand pump was placed in an alley near a bank, at the request of the bank, for the purpose of pumping water out of its basement. The court held that § 386 did not apply and that the defendant-contractor, who was operating the pump when the plaintiff was injured, was entitled to the protection of the trespasser rule because he was operating the pump at the invitation and for the benefit of the landowner. Some courts have found that an occupier, who operates an inherently dangerous apparatus, may owe a duty of care to those who technically are trespassers. See Hughes, Duties to Trespassers: A Comparative Survey & Reval-

SIMMS, Chief Justice, concurring in part, dissenting in part:

I concur in Part I of the majority opinion but dissent to Part II. I believe the trial court erred in refusing to instruct that decedent was a trespasser and that the only duty of care owed to him was to not injure him wilfully or wantonly. I would reverse and remand the matter for a new trial.

uation, *supra* at 640; Annot.: Status of Injured Adult as Trespasser on Land Not Owned by Electricity Supplier, As Affecting Its Liability for Injuries Inflicted on Him by Electric Wires it Maintains Thereon, 30 A.L.R.3rd 777 [1970].

9. *Rotramel v. Public Service Company,* Okl., 546 P.2d 1015 [1976].

10. *Sutherland v. Saint Francis Hospital, Inc.,* Okl., 595 P.2d 780 [1979]. Under the common-law status classification system, the only duty owed a trespasser is to avoid injuring him wilfully or wantonly.