Myra ROWELL, individually and as legal guardian for and on behalf of Bearnard Lee Rowell, Jr., an incompetent person, Appellant,

v.

EL RENO JUNIOR COLLEGE FOUNDATION, INC., an Oklahoma corporation; and Oklahoma, Kansas and Texas Railroad Company, a Texas corporation, Appellees.

No. 75428.

Supreme Court of Oklahoma.

Dec. 21, 1993.

Rehearing Denied Feb. 15, 1996.

Michael W. Brewer, Robert D. Tomlinson, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellant.

A. Camp Bonds, Jr., Bonds, Matthews, Bonds & Hayes, Muskogee, and Tom R. Cornish, Oklahoma City, for appellee Oklahoma, Kansas and Texas R.R. Co.

John C. Howard, El Reno, for appellee El Reno, Jr., College Foundation, Inc.

HARGRAVE, Justice.

The issue before us is whether the trial court erred in granting summary judgment to defendants on the grounds that plaintiff Bearnard Rowell was a trespasser and that Rowell's own actions were the cause of his injury. We find that the trial court properly granted summary judgment.

Plaintiff Bearnard Rowell was employed by Mark Stevenson to help convert a former railroad office building into an apartment building. Plaintiff went onto defendants' property[1] to remove three or four old telegraph poles because his employer found them unsightly. The land in question had been acquired by the Oklahoma Department of Transportation on August 26, 1982, upon the bankruptcy of Chicago, Rhode Island and Pacific Railroad. On October 4, 1982 the Department of Transportation entered into a Lease–Purchase & Operating Agreement with Oklahoma, Kansas and Texas Railroad Co. (Railroad) covering the Rock Island general office building in El Reno and a parcel of land surrounding the building. This property was adjacent to the railroad's main line through El Reno. The telegraph poles were located within fifty (50) feet of the railroad's main line.

On July 1, 1985, Railroad leased the building and an area surrounding the building, covering a total of approximately 56,810 square feet, to El Reno Junior College Foundation (Foundation) for maintenance of a student dormitory, married student housing and other auxiliary enterprises. Later the Foundation purchased the fee interest in the building and a small portion of the land surrounding it (approximately 22,000 square feet). The land purchased did not include that portion of the lease upon which the telegraph poles were located. The Founda-

tion built a fence on its boundary between the Railroad's main line and the leased premises. The Foundation did not renovate the office building and on February 6, 1987, Foundation sold the building and land, totaling approximately 22,000 square feet, to Mark Randall Stevenson, who planned to convert the Rock Island office building into apartments for the elderly. Mr. Stevenson hired Bearnard Rowell as a laborer on the project.

On May 21, 1987, Rowell and his job-site supervisor, Don Stevenson, went onto the premises owned or leased by appellees to remove three or four "unsightly" telegraph poles. The poles were not located on Stevenson's property, and defendants were never informed of any intent to remove or otherwise interfere with their poles. Mr. Stevenson testified that, as to the pole in question, the wires were taut and the pole appeared to be fine. Mr. Rowell volunteered to climb the pole (Mr. Stevenson testified that he used a ladder) and began cutting the approximately twelve to fourteen wires on the north side of the pole. When the last wire was cut, the pole fell and Mr. Rowell was very seriously injured and remains so. It is undisputed that the pole was not on Mark Stevenson's property and that neither Foundation nor Railroad had notice or knowledge of Stevenson's decision to remove the pole; Don Stevenson testified that he just decided to remove the poles that day and set about doing so.

Based on the above facts, the trial court granted the Railroad's and Foundation's motions for summary judgment on the grounds that Bearnard Rowell was a trespasser on the defendants' property and that Rowell's own actions were the proximate cause of his injuries. A lawyer-staffed panel of the Court of Appeals reversed, finding that fact issues remained.

Plaintiff first argues that because the defendants knew and approved of the construction and conversion project, there was an "implied invitation" to Rowell to enter their

---

1. Defendants disagree as to which of them was in possession of the property upon which the telegraph poles are located, but we need not determine this in light of our upholding the trial court's decision. For the sake of convenience we refer herein to "defendants' property."

property and remove their pole. Secondly, plaintiff argues that the trespass defense is not available where defendants allegedly violated the National Health and Safety code by failing to inspect and maintain the poles and violated other city ordinances and state statutes covering nuisance. Thirdly, plaintiff advances the theory that, as to the leasehold between Foundation and Railroad, each assumed particular duties as to maintenance and upkeep of the property and that they failed to do so, and Rowell is a third-party beneficiary of the lease provisions.

We find that the trial court correctly granted summary judgment for defendants, based on the undisputed facts. The facts urged by appellant as "disputed" are irrelevant to a determination whether defendants were negligent in this case. First, the undisputed facts establish that Rowell was a trespasser. Plaintiff's argument that because defendants knew and approved of the remodeling project there was, therefore, an implied invitation to enter their property and remove their poles is without merit. We said in *Miller v. Oklahoma Power and Water Co.,* 194 Okl. 193, 148 P.2d 980, 981 (1944) that an invitation may be implied where there is a common interest or mutual advantage existing and enjoyed by the parties. It stretches credulity to contemplate that mere knowledge of a remodeling project by the owner of adjacent property constitutes an implied invitation to go onto that property and remove the owner's personal property. See, *Atchison, Topeka and San Francisco Railway Co. v. Phillips,* 158 Okl. 141, 12 P.2d 908 (1932).

In *Miller v. Oklahoma Power and Water Co., supra,* the defendant owned a transformer pole and equipment that serviced, among others, a neighboring farm. The farmer traded one line on which the current had been cut off to one Walker, who directed his employee to remove the dead cable from the transformer. The employee mistakenly cut a live cable and was killed by electric shock when he attempted to reconnect the line. Even though Walker owned one of the cables connected to the transformer, we found that there was no joint-user of the pole in question and no express or implied invitation to Walker or his employees to use the pole.

Because the decedent was not an invitee, we found that his presence on the pole was not to be anticipated by defendant and that defendant owed him no greater duty than not to wantonly or wilfully injure him.

There was no express invitation to Stevenson or his employees to come onto defendants' property and the facts do not raise an inference of implied invitation. Plaintiff showed no facts to establish that any common interest existed between the defendants and Stevenson and his employees, nor was there any showing that the pole was employed to the mutual advantage of the parties. In the case at bar, even if the possibility that Stevenson's employees might cross the defendant's property in the course of their work were considered, we cannot find that this knowledge constitutes implied authorization to the workers to destroy defendants' property without permission. The essence of establishing the existence of a duty is foreseeability of the consequences of a breach of the alleged duty. *Trett v. O.G. & E.,* 775 P.2d 275, 279 (Okla.1989).

Plaintiff next argues that the trespass defense is not available because a violation of the National Health and Safety Code (or other codes) occurred. Plaintiff relies on *Woodis v. O.G. & E.,* 704 P.2d 483 (Okla. 1985) for the proposition that where failure to observe a safety requirement is the proximate cause of the injury, the question of status of the injured party cannot be raised. In *Woodis,* we found that the plaintiff was a trespasser and that no duty of care was owed other than a duty not to wilfully or wantonly injure. We went on to say that where a violation of the National Electrical Safety Code existed by virtue of defendant's placing the lowest rung of its pole ladder less than six and one-half feet from the ground, the plaintiff's status did not apply and the issue became whether the violation of the safety code was the proximate cause of the plaintiff's injuries. However, in the case at bar, even if a violation of the National Health and Safety Code occurred, the uncontroverted facts establish that any such violation would be merely a condition, rather than the proximate cause of injury. See, *Pepsi–Cola Bot-*

*tling Co. of Tulsa v. Von Brady,* 386 P.2d 993 (Okla.1963).

The uncontroverted facts establish that plaintiff was a trespasser who went onto defendants' property, without informing defendants of any such intention to do so, and climbed defendants' pole and cut twelve or more wires on one side of the pole. At that point, the pole fell, resulting in plaintiff's injuries. The violation of the National Health and Safety Code and city ordinances or state statutes argued by plaintiff is the failure to inspect or maintain the poles. However, the pole did not fall on Rowell when he entered defendants' property, the pole did not fall when Rowell climbed it and the pole did not fall until Rowell cut the last wire on the north side of the pole. The pole's condition was merely that: a condition. Plaintiff's actions in cutting the wires to the pole caused his injuries.

Further, in *Woodis* we considered that a higher duty of care is owed by the owner and operator of high voltage electric lines. We said:

> "The distinction between the trespasser-status-liability determination on the part of an ordinary landowner as against the negligence claim of a trespasser on the one hand, and the trespasser-status-liability determination on the part of the owner and operator of high voltage electric lines who has violated a police power safety statute or regulation as against the claim of a trespasser on the other hand is illustrated in the case of *Norris v. City of Miami,* [367 So.2d 1038 (Fla. 3 DCA 1979) ] (citation omitted) ..."

In discussing the *Norris* case we quoted the following: "While this high degree of care expressed in [*Florida Power & Light Co. v.*] *Bridgeman* [, 133 Fla. 195, 182 So. 911 (1938) ] (citation omitted) does not raise an electric company to the level of an insurer against all possible accidents (citation omitted), it does demand that an electric company guard against occurrences which can reasonable be anticipated by the utmost foresight." And, finally, citing *City of Altus v. Wise,* 193 Okl. 288, 143 P.2d 128 (1943), we said: "Companies engaged in the business of conducting electricity over high voltage wires are bound to exercise much greater precautions in its use than if the property were of a less dangerous character. (Citations omitted). They are therefore bound to anticipate more remote possibilities of danger." The rationale in *Woodis* does not apply to the case at bar. The plaintiff in *Woodis* was injured as a result of electrical shock, precisely the kind of injury for which we believed a higher duty of care was owed by the electric company defendant. The injury in the case at bar occurred when an abandoned pole fell after plaintiff climbed the pole and cut the wires from one side of the pole. There is no allegation in the case at bar that the telegraph poles were electrified nor that plaintiff's injury had anything to do with high voltage electricity.

█ Plaintiff argues that the question of proximate cause is always for the jury to decide. Where the facts are undisputed, however, proximate cause is a question for the court. *Johnson v. Mid–South Sports, Inc.,* 806 P.2d 1107, 1109 (Okla.1991). Violation of a city ordinance is not negligence unless the violation was the proximate cause of the injury; otherwise it is only a condition. *Pepsi–Cola, supra.* We said in *McKellips v. St. Francis Hospital,* 741 P.2d 467, 470 (Okla.1987), regarding proximate cause:

> "Proximate cause consists of two elements: cause in fact and legal causation. Legal causation concerns a determination whether legal liability should be imposed as a matter of law where cause in fact is established and depends upon considerations of common sense and policy. *Cause in fact, on the other hand, deals with the 'but for' consequences of an act.* The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct."

The sufficiency of the evidence to show cause-in-fact presents a question of law for the court. Sufficiency of the evidence is the legal standard applied to determine whether the cause may go to the jury. *McKellips v. St. Francis Hospital,* at 471. Mere possibility or speculation is insufficient. Whether there is any evidence tending to show a causal connection between defendants' acts and the plaintiff's injury is a question of law

for the court. *Atherton v. Devine*, 602 P.2d 634 (Okla.1979). Regarding violation of the statutes, the person must be a member of the class the statute was designed to protect and the injury of the kind the statute was intended to prevent. *Pepsi–Cola Bottling Co. of Tulsa, supra.* Even assuming that defendant was negligent in failing to inspect and maintain its pole, such negligence was not the "but for" cause of plaintiff's injuries. *See, City of Okmulgee v. Hemphill,* 183 Okl. 450, 83 P.2d 189 (1938).

The foreseeable consequences of failure to maintain or remove the poles was that they might fall on someone, or that if the wires sagged down someone might become entangled in them. Here, Don Stevenson testified that the wires were approximately thirty feet above the ground and the wires were taut. Plaintiff's argument that defendant's failure to maintain the pole or remove it was the but-for cause without which the accident could not have happened is without merit.

A tragic accident occurred when Mr. Rowell attempted to remove the telegraph pole. However, the negligence, if any, of defendant in not inspecting or maintaining the pole merely furnished a condition which reacted with the independent act of Rowell which caused his injury. As such it was a remote cause and not the proximate cause of the injury. See, *Johnson v. Mid–South Sports, Inc.,* 806 P.2d 1107, 1109 (Okla.1991).

As to plaintiff's nuisance argument, 50 O.S.1981 § 14 provides that a person injured by a private nuisance may abate it by removing, or, if necessary, destroying the thing which constitutes the nuisance, without committing a breach of the peace or doing unnecessary injury. However, the immediately succeeding section, 50 O.S. § 15 provides that where a private nuisance results from a mere omission of the wrongdoer, and cannot be abated without entering upon his land, reasonable notice must be given to him before entering to abate it. Even were we to accept plaintiff's argument that the poles were a nuisance that they were abating, it is undisputed that the poles were upon defendants' property and that no notice was given to defendants.

Because we find that the trial court correctly granted summary judgment to defendants, we need not address the remainder of plaintiff's arguments.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, THE OPINION OF THE COURT OF APPEALS IS VACATED AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, OPALA, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in result.

ALMA WILSON, J., concurs in part, dissents in part.