Tony Wayne SIDWELL, a minor, who sues by and through Ava Jane Sidwell, his mother, as next friend, Plaintiff in Error,

v.

Ralph H. McVAY, Myra E. McVay, Mickey McVay and W. F. Peterson, III, Defendants in Error.

No. 36339.

Supreme Court of Oklahoma.

April 19, 1955.

Appeal from the District Court of Oklahoma County; Albert C. Hunt, Judge.

Action by Tony Wayne Sidwell, a minor, by and through Ava Jane Sidwell, his mother and next friend, as plaintiff, against the defendants, Ralph H. McVay, Myra E. McVay, Mickey McVay and W. F. Peterson III, for damages resulting from loss of hand in an explosion of gunpowder. From order sustaining demurrers to evidence, plaintiff appeals. Affirmed.

Howard K. Berry, Oklahoma City, for plaintiff in error.

Savage, Gibson, Benefield & Shelton, by Nelle Rhodes Fisher, Oklahoma City, for defendants in error.

Clayton B. Pierce, Pierce, Mock & Duncan, Oklahoma City, for defendant in error, W. F. Peterson, III.

DAVISON, Justice.

Tony Wayne Sidwell, a sixteen year old boy, as plaintiff brought this action by and through his mother and next friend, Ava Jane Sidwell, against W. F. Peterson III and Mickey McVay, two other boys about the same age, and against Ralph H. McVay and Myra E. McVay, the parents of the latter, all as defendants to recover damages for personal injuries resulting from a fireworks explosion. The parties will be referred to as they appeared in the trial court.

The question here presented is whether or not the trial court was correct in sustaining demurrers to plaintiff's evidence and dismissing the action. On the morning of July 4, 1952 at about 9:00 o'clock, the

defendant Mickey McVay drove by the home of plaintiff in the McVay family automobile. The two boys then drove to the McVay home where they got with the Peterson boy. For several years the three had been close school chums. They then drove to a fireworks retail sales stand where they pooled their money and bought a gross of firecrackers known as "cherry bombs." They returned to the McVay home where, in the breakfast room thereof and with kitchen knives, they opened about sixty or seventy of the firecrackers and removed the gunpowder totaling about one half teacupful. From the garage or shed, they got a short piece of metal pipe with a cap screwed on one end. They used a hammer and punch to make a small hole in the middle of the pipe, in which to insert the fuse. They poured the powder into the pipe and stuffed pieces of paper in the open end. Unable to locate another cap for the pipe, the plaintiff laid the pipe on the concrete floor or driveway of the garage and began trying to beat the open end of the pipe together with a hammer. The other two boys were frightened and moved back to a safe distance. After plaintiff had hammered on the pipe for several minutes, the contraption exploded blowing off his left hand.

During the time the boys were removing the powder from the "cherry bombs," both Mr. and Mrs. McVay came through the kitchen several times, the latter admonishing them about making a mess in the breakfast room. While the plaintiff was hammering on the pipe, Mr. McVay came out of the house and got into his car. He noticed what the boys were doing and told them to get back away from the shed or they would burn it up. About a year previously the boys had made two similar bombs from aluminum pipe and Mr. McVay had driven them to a lake near the city limits to shoot them. At about that same previous time, the plaintiff and his younger brother and possibly the McVay boy had constructed a similar bomb and had exploded it outside the city limits.

This substantially outlines the evidence as disclosed by the record, as to which the trial court sustained the demurrers of the individual defendants. Plaintiff, in arguing his allegation of error in the court's order states that his position is:

"It was the duty of the defendants as the owners and operators of the premises to either take the dangerous ingredients away from the plaintiff, or to require him to get off of the premises before going ahead with the assembly of their various materials into the dangerous product, or, to warn plaintiff of the danger connected with what he was doing."

With this contention, we do not agree. Neither party cites, nor do we upon independent investigation find, a reported case wherein the factual situation is analogous to that in the instant case. The cases cited and relied upon by plaintiff deal with the doctrine of attractive nuisance. Here the plaintiff was not attracted to the McVay home nor was he injured by any condition thereon. He was injured as a result of his own acts upon the dangerous instrumentality, the gunpowder, which the plaintiff himself had assisted in bringing onto the premises. The plaintiff was a sixteen year old boy with an alert mind and a past experience with the dangerous substance. The attractive nuisance doctrine had no application. The following statement in the case of Keck v. Woodring, 201 Okl. 665, 208 P.2d 1133, 1136, is particularly applicable here:

"Whether the child was of an age and capacity to understand and avoid danger is usually a question for the jury, but it may be stated as a settled rule in this state that after the age of fourteen all minors are prima facie presumed to be capable of the exercise of judgment and discretion. Plaintiff being over the age of fourteen, and there being no evidence of lack of capacity, but, on the contrary, there being evidence that plaintiff was of advanced intelligence, the trial court should have held as a matter of law that the rule of attractive nuisance could not be invoked."

Citation of authority is unnecessary to support the rule that in order for

plaintiff to recover in an action founded upon negligence, proof must be made of the essential elements; that defendant had duty to protect injured person from injury; that defendant failed to perform that duty, and that such failure was proximate cause of injury. The lack of proof of any one of these elements is fatal to the action. In the case before us there is a complete absence of proof of any duty to plaintiff owed by any of the defendants. Even though the means had been at hand to stop plaintiff from hammering the pipe, none of the defendants was obligated to do so.

 "As a general rule, the law imposes no duty on one person actively to assist in the preservation of the person or property of another from injury, even though the means by which harm can be averted are in his possession. The law does not undertake to make men render active service to their neighbors at all times when a good or brave man would do so.

"Those duties which are dictated merely by good morals, or by humane considerations, are not within the domain of the law." 38 Am. Jur. 658, Negligence sec. 16.

The last quoted rule is also applicable to the minor defendants, McVay and Peterson. None of the evidence tended to establish a duty due from them to plaintiff nor any breach of duty. There was testimony that these latter defendants, as they were seeking a place of safety, tried to get plaintiff to stop hammering on the bomb. Since, however, the plaintiff denied it and the matter was presented on demurrer, there was no proof that they sanctioned or encouraged the dangerous acts.

Plaintiff's evidence wholly failed to establish any of the essentials above enumerated entitling him to recover and, as was said in the case of Earl v. Oklahoma City-Ada-Atoka Ry. Co., 187 Okl. 100, 101 P.2d 249, 251, and numerous other cases,

"It is well settled that where there is no evidence reasonably tending to show that the defendant was guilty of negligence it is error for the trial court to submit that issue to the jury. * * * Since there was no evidence which justified the court in submitting the cause to a jury it was not error for the trial court to sustain a demurrer to the evidence."

Therefore, the trial court committed no error in sustaining the several demurrers to the evidence of plaintiff.

The judgment is affirmed.