John SUTHERLAND, Appellant,

v.

SAINT FRANCIS HOSPITAL,
INC., Appellee.

No. 51273.

Supreme Court of Oklahoma.

Feb. 6, 1979.

Rehearing Denied June 18, 1979.

Bob Funston, Daniel J. Boudreau, Broken Arrow, for appellant.

Thomas R. Brett, Roy C. Breedlove, Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, for appellee.

OPALA, Justice:

In this negligent-tort litigation, occasioned by an entrant's fall on hospital premises, our task is to restate familiar common-law principles of land possessor's liability and apply them to the undisputed facts (and inferences therefrom) presented at the trial level (on hospital's motion for summary judgment) to determine if there were any genuine issues as to material facts. *Flick v. Crouch,* Okl., 434 P.2d 256, 262 [1967] and *Weeks v. Wedgewood Village, Inc.,* Okl., 554 P.2d 780, 785 [1976].

Early one morning entrant's wife left home by ambulance for emergency treatment at the hospital. He followed her by car and then found her on a surgical cart bed in the emergency area hallway where there was nothing for him to sit on in her immediate presence. The waiting room nearby, where chairs were provided, would have been too far from her side. She was in pain and he wanted to stay with her for comfort. On crutches for some time after multiple surgeries in hip joints and knee, he remained standing by the bed as long as he could. Reaching the limit of his endurance, he then proceeded to a "little alcove off the main door" where he had previously seen a stack of wheelchairs (at least 15). He spotted one that was on the floor, unfolded, and wheeled it to the side of his wife, laying his crutches against her bed.

After about an hour an orderly took the wheelchair away (indicating it was needed for another patient) and left him a physician's stool. The stool was low (12 to 14 inches high) and had no back or arms.

For about 15 minutes thereafter he used the stool by his wife's side, pulling himself up by the rail of her bed to be able to talk with her. In course of some "unexpected movement" he lost his balance when his hand slipped off the rail. He then fell over backward fracturing a vertebra.

■ Land possessor's liability in negligence for harm occurring upon the premises varies with the status of the entrant complaining of injury.[1] Definition of duty that marks out the limit of protection afforded an entrant broadens or narrows with the beneficial interest of the possessor in the presence of the other upon the land.[2] This has been the common law approach ever since landlord's sovereignty and immunity for acts done within the boundaries of *his* land gradually gave away to present-day civil accountability.[3] When modern tort law finally incorporated possessor's liability, the concept of negligence came to be applied within the restrictive framework of relational, status-based duties.[4] In short, the common law has never seen fit to extend its principles of general negligence (as they came to be fashioned in the last century) to govern harm occasioned on the premises of others.

1. Marsh, The History and Comparative Law of Invitees, Licensees and Trespassers, 69 L.Q. Rev. 182, 259 (1953).

2. *Henryetta Construction Co. v. Harris,* Okl., 408 P.2d 522, 531 (1965), 28 A.L.R.3d 876; *Paubel v. Hitz,* 339 Mo. 274, 96 S.W.2d 369 (1936).

3. Marsh, supra, n. 1, at p. 359–360, W. H. Griffith, Licensees and Traps, 41 L.Q.Rev. 255, 258 (1925).

4. Marsh, supra, n. 1, at p. 359.

Although questioned in some literature[5] and even repudiated by isolated case-law pronouncements in at least two states,[6] the common-law approach has continued to command our unswerving commitment.[7] Its abandonment is not urged upon us here by either party. We find no public policy reason to declare it unsuited to our present-day needs[8] and hence decline to depart from it.

■ The Court of Appeals seemed to be of the impression that implicit in the broad provisions of 76 O.S.1971 § 5(a)[9] is legislative abrogation of the common-law restrictions on negligence-based liability of possessors, or at least, is some authority for confining these restrictions to *harm* from *conditions* as distinguished from *acts* upon the land. We hold that *neither implication so perceived is valid.*

Section 5(a) first came with the Revised Laws of 1910 as § 998. Its text, which remains unchanged, was later included *in toto* as § 5(a) into the Good Samaritan Act.[10]

We are indeed mindful that in California, whose laws contain a provision identical to § 5(a),[11] the Supreme Court recently held that since this broad statute is unmistakably of civil-law origin it may serve as legislative authority for repudiating all common-law status classifications which re-

strict land possessors' liability in negligence.[12] We find this reasoning inapposite to our state.

■ In Oklahoma, § 5(a) has long been recognized as not discordant with the common law.[13] This view appears well-taken because § 5(a) must be construed together with the next section (76 O.S.1971 § 6), also adopted in 1910, which contains a clear qualifying clause to the effect that ". . . the right of protection from bodily . . . harm" is *"subject to the qualifications and restrictions provided by law . . ."* (emphasis supplied). Moreover, the common-law status classifications have received statutory recognition.[14] We hence reaffirm our continued commitment to the common law concepts of possessors' liability in negligence.

We now pass to consider the next implication divined from the opinion of the Court of Appeals. This one suggests we must treat harm from *negligent "acts"* differently from that which results from *"conditions"* upon the premises and to the acts we are free to apply the principles of general negligence law unhampered by the relationally structured duty patterns.

Neither history nor modern case law gives support to allowing the distinction suggested in this case.[15]

---

5. Comment in 44 N.Y.U.L.R. 426 (1969); annotation in 32 A.L.R.3d 508.

6. *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (Cal.1968). *Kenney v. Grice,* 465 P.2d 401 (Colo.1970), and *Mile High Fence Company v. Radovich,* 175 Colo. 537, 489 P.2d 308, 313 (Colo.1971).

7. *Rogers v. Cato Oil & Grease Co.,* Okl., 396 P.2d 1000, 1003 (1964); *Buck v. Del City Apartments, Inc.,* Okl., 431 P.2d 360, 365 (1967).

8. As required by 12 O.S.1971, § 2.

9. "Everyone is responsible, not only for the *result of his wilful acts, but also for an injury* occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury upon himself, and except as hereinafter provided."

10. 76 O.S.Supp.1978 § 5; the 1963 amendment *added to this section the "GOOD SAMARITAN ACT."*

11. Calif.Civ.Code, § 1714.

12. *Rowland v. Christian,* 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968).

13. *Midland Valley R. Co. v. Littlejohn,* 44 Okl. 9, 143 P. 1 (1914); *Hazlett v. Bd. of Co. Comm. of Muskogee Co.,* 168 Okl. 290, 32 P.2d 940 (1934).

14. 76 O.S.1971 § 12.

15. Prior Oklahoma case law does not seem to give recognition to the distinction sought to be made. See, *Williams v. Safeway Stores, Inc.,* Okl., 515 P.2d 223 (1973); *J. J. Newberry Company v. Lancaster,* Okl., 391 P.2d 224, 229 (1964); *Marsh, supra,* at p. 359.

■ The parties agree, and we accept as legally correct, that entrant, when injured upon the premises, occupied the status of an invitee.[16] No other relationship is claimed to have existed. The hospital is not called to account for its conduct as health service supplier or in any other capacity except that of land possessor. All complaints relate to *acts* and *omissions* in the negligent management of the premises and equipment thereon.

Were we to fashion here the distinction suggested, the result would dichotomize invitor's common-law liability into separate rules for acts as distinguished from omissions. This would in fact turn the clock back a century and a half. It would reintroduce ancient subtleties in regard to torts that are "direct and immediate" (trespass) and those that are "indirect and consequential" (trespass on the case). Much of this technical lore disappeared, happily for us, with the demise of the writ system.[17]

■ Invitee's suit seeks to impose liability, under *respondeat superior,* both for acts and omissions of the orderly. Had the orderly been sued alone or been joined as a party-defendant, his liability in negligence, if any he have, for both acts and omissions would be the same as that of possessor to an invitee.[18] Thus, if we adopt here a distinction between acts and conditions in the possessor's duty of care, an anomaly would arise. As actor in the harm-dealing event, the orderly would be held to a more restrictive duty of care for his own tortious acts than his principal under *respondeat superior.*

A different rule of liability for negligent acts and for negligence in maintaining conditions would clearly distort common law

symmetry and the policy underlying its time-honored rules.

■ The hospital, *qua* possessor, was not legally bound to protect its invitee from all foreseeable risk of harm to be encountered upon the premises.[19] Its duty as invitor extends no further than to use ordinary care to maintain the premises in a reasonably safe condition.[20]

This duty does not require that invitee be warned of or be otherwise protected from perils that are open and obvious.[21]

■ The physical premises here were nowhere defective. Neither the surgical cart bed, upon which invitee's wife was lying, nor the examination stool was shown to be unsafe. The orderly's act of substituting the low backless and armless stool for a wheelchair did not render the premises unsafe and constitute a breach of hospital's duty *qua* possessor. No hidden, lurking or secret peril followed. Whatever danger existed or arose was open and obvious. In fact, invitee was in a better position than the hospital to perceive and appreciate that danger. It was he who readily admitted he didn't feel the stool was unsafe. On the contrary, he testified that while the stool was not "to comfortable", he thought he ". . . could make it" and ". . . would be all right there on the stool."

The harm-dealing event did not result from hospital's breach of its duty to invitee. To impose liability here would elevate possessor's duty to an invitee above the existing level and make that duty the same as that which applies to patients. To them the degree of care the hospital owes is much

**16.** *Hull v. Newman Memorial Hospital,* Okl., 379 P.2d 701 (1963).

**17.** Shipman, Common-Law Pleading, pgs. 66–83.

**18.** *Lemon v. Busey,* 461 P.2d 145, 152 (Kan. 1969); Restatement, Second, Torts § 383.

**19.** *Sidwell v. McVay,* Okl., 282 P.2d 756, 759 (1955); *Buck v. Del City Apartments, Inc.,* supra, at p. 365.

**20.** *Rogers v. Cato Oil & Grease Co.,* supra, at p. 1004.

**21.** *Rogers v. Cato Oil & Grease Co.,* supra, at p. 1005; *Jackson v. Land,* Okl., 391 P.2d 904, 906 (1964); *C. R. Anthony Company v. Million,* Okl., 435 P.2d 116, 117 (1967).

higher. It is commensurate and consistent with their physical or mental debility.[22]

Disposition by summary judgment was proper. Undisputed facts (with proper inferences from them) unequivocally support but one conclusion—hospital's want of liability. The armless and backless shape of the allegedly offending stool, as well as its low height, if, "defects", were properties readily apparent and observable. There were no hidden hazards. Invitee admittedly could perceive *no* danger from the use of the stool. Thus, in ruling on summary judgment motion, trial judge did not violate the rule which prohibits him from choosing among differing or conflicting inferences from admitted or undisputed facts. *Weaver v. Pryor Jeffersonian,* Okl., 569 P.2d 967, 973 [1971].

There was no genuine controversy as to any material fact. Trial court's summary judgment for the hospital is affirmed.

LAVENDER, C. J., IRWIN, V. C. J., and BARNES and SIMMS, JJ., concur.

WILLIAMS, HODGES, DOOLIN and HARGRAVE, JJ., dissent.

WILLIAMS, Justice dissenting:

I respectfully dissent from the majority opinion. To my way of thinking, that opinion misapprehends the alleged factual and legal basis for its requested decision, to-wit: the sustention of an appellee's motion for summary judgment. A case should be summarily dismissed only when fully warranted under the facts and circumstances and applicable law. This underlying consideration is what prompted the Court to mandate that, "[O]n motion for summary judgment all inferences and conclusions to be drawn from underlying facts . . . must be viewed in light most favorable to the party opposing the motion."[1]

In *Perry v. Green,* 468 P.2d 483, 489 (Okl. 1970) cited in *Northrup v. Montgomery Ward & Co.,* 529 P.2d 489 (Okl.1974) this Court stated: "A motion for summary judgment, under Rule 13 . . . . should be denied if the facts concerning *any issue raised* . . . . are conflicting, *or if reasonable men,* in the exercise of a fair and impartial judgment, *might reach different conclusions from undisputed facts concerning any issue as set forth in such instruments.*" (Emphasis added).

In the view of this writer, there properly remained issues for determination by the trier of the facts as to whether certain duties were owed to plaintiff, an invitee on defendant's premises, related to plaintiff's apparent state of health, position in the wheel-chair and leaning against his wife's bed, instructions and demands made upon him by defendant's orderly, substitution of the stool for the wheel-chair, et cetera. These issues involved more than those emanating from mere possession of real estate. A jury trial should have been afforded plaintiff.

Pertinent here, it seems, are questions raised in the opinion of the Court of Appeals (by Brightmire, J.) referred to in the opinion of the majority, in substance as follows: What are the relevant circumstances attending the incident which have a bearing on the propriety of the orderly's act of demanding the wheel-chair? Were there present circumstances which would suggest to a prudent person the necessity that Appellant-Sutherland needed the wheel-chair from a standpoint of safety? Was the appearance and demeanor of Sutherland such as to constitute notice to the orderly?[2] These unanswered questions are sufficient to introduce substantial controversy necessary to remove this case from summary treatment.[3] Appellee has failed to sustain its burden under the *Northrip* test, *supra.*

**22.** *St. John's Hospital & School of Nursing v. Chapman,* Okl., 434 P.2d 160, 169 (1967); 70 A.L.R.2d 377, 71 A.L.R.2d 436; see 16 A.L.R.3d 1237.

**1.** *Weaver v. Pryor Jeffersonian,* 569 P.2d 967 (Okl.1977).

**2.** 49 OBAJ 1742 at 1743 (Section III).

**3.** Refer to O.S.A. Ch. 2 App.Rule 13, entitled "Judgment where Facts not controverted".

I reiterate my position that the issue to be decided is not the totality and history of possessory landholder's liability for negligent torts, but the summary preclusion of a trial by jury.

Certiorari should be denied, the Court of Appeals decision upheld, and the case tried by jury. As stated, I dissent.

I am authorized to state that Mssrs. Justices Hodges, Doolin and Hargrave concur in the above dissenting views.