Brandy Lynn JUVENAL, By and Through her mother and next friend, Sharla Diane JUVENAL, and Sharla Diane Juvenal, individually, Appellants,

v.

OKEENE PUBLIC SCHOOLS, Independent School district I–9, Blaine County, Oklahoma, City of Okeene, Blaine County, Oklahoma, and Okeene Public Works Authority, Appellees.

No. 75577.

Supreme Court of Oklahoma.

July 12, 1994.

**1028**

Duke Halley and David B. Christian, Halley & Christian, Woodward, for appellants.

Russell L. Hendrickson, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellee, Okeene Public Schools.

Andrew W. Lester and Laura Holmgren–Ganz, Lester, Bryant & Ganz, Enid, for appellees, City of Okeene and Okeene Public Works Authority.

WATT, Justice.

Appellants, the Juvenals, appeal from a jury verdict for the Okeene Public Schools, and the Okeene Public Works Authority, and from a directed verdict for the City of Okeene. The Authority is a public trust that owns and operates the electrical system in Okeene.

## FACTS AND PROCEDURAL HISTORY

On May 26, 1988, Brandy Juvenal, age 11, fell while trying to climb to the roof of the Okeene grade school. Brandy was trying to reach a flat roof over the south entrance of the school building to retrieve the shoe of a child with whom she was playing. When Brandy fell, she landed on her feet and broke her ankles. Through her mother, Brandy sued the City, and the Schools for her injuries on May 12, 1989. Brandy's mother sued personally for Brandy's medical expenses and her own mileage to and from medical facilities. Later, on January 4, 1990, the Juvenals joined the Authority as a party defendant.

Brandy sought to reach the roof by climbing a metal pipe that was part of the school building's electrical service. Wires from a nearby electrical pole were attached to the top of the service pipe. Those wires were connected to school building wiring. The electrical service had been installed by the Authority, which was responsible for it up to its connection point with the school building wiring. The pipe was attached to the south side of the building about two feet west of the west edge of the flat roof. The roof was ten feet above ground level. Brandy and her mother claimed that Brandy fell because she touched an exposed electric wire.

The parties agree that if any wire for the electrical service was exposed, it violated the National Electrical Code and the National Electrical Safety Code. The evidence conflicted on this issue, but the record contains testimony from which the jury could have concluded that the wiring complied with the Codes. Wayne Carter, an electrician in Okeene, testified that sometime in 1987 the Okeene School Superintendent asked him to inspect the electrical wiring at Okeene Grade

School. The Superintendent told Carter he had heard a rumor a child had been hurt at the grade school whose injury might have been caused by the electrical service. Carter testified that his inspection showed the insulation on the connection between the service and the school building wiring was "weathered," but "the wires was not exposed, no."

Following his inspection, Carter told the Superintendent that the wiring satisfied the Codes, but suggested he be authorized to raise the service an additional five feet to make it "child proof." The Superintendent then authorized Carter to raise the service. Carter, however, expected the Superintendent to tell him when to do the work because to do the work, Carter would have to turn off the School's electric service, and leave it off for at least a day. Because of the misunderstanding between Carter and the Superintendent, the service was not raised until after Brandy fell.

Ronnie Cantrell was present when Brandy started to climb toward the roof of the school. Ronnie had fallen from the same roof the previous year. Ronnie's fall was apparently the one about which the Superintendent had heard. At trial, Brandy testified,

> Well, Ronnie said ... I bet you fall, and I said I bet I don't. So I just started crawling up there.

The Juvenals claim that the trial court failed to recognize the standard of care the defendants owed Brandy and that its instructions on this issue deprived them of a fair trial. They also complain of other instructions for various reasons. In addition, the Juvenals contend that they were entitled to a directed verdict against all defendants and that the trial court erred in directing a verdict in favor of the City. The Juvenals also say the trial court erred in disallowing evidence that the defendants raised the height of the service after Brandy's accident.

1. The version of 51 O.S. § 156.B effective at the date of Brandy's accident provided in material part:
    B. Claims against the state or a political subdivision are to be presented within ninety

## I.

■ Before considering the Juvenals' contentions, we must decide an issue the Authority raises. The Authority claims that the Juvenals' claim against it is barred because the Juvenals did not give timely notice to the Authority under § 156.B of the Governmental Tort Claims Act, 51 O.S.1986 Supp. §§ 151 et seq. That the Juvenals' action is governed by the Governmental Tort Claims Act is undisputed. The Juvenals gave timely notice of their claim to the City under § 156.B of the Act.[1] The Juvenals, however, gave no notice of their claim to the Authority and did not sue it until more than one year after Brandy's accident.

We have long held that substantial compliance with the notice provisions of the Act satisfies its provisions. *Lucas v. Ind. Public School Dist. No. 35*, 674 P.2d 1131 (Okla. 1983). In *Conway v. Ohio Casualty Ins. Co.*, 669 P.2d 766, 767 (Okla.1983) we said,

> The purposes of the notice requirement are to further legitimate interests by promoting prompt investigation; by providing the opportunity to repair any dangerous condition and for speedy and amicable settlement of meritorious claims; and to allow the opportunity to prepare to meet possible fiscal liabilities.

The Authority does not claim that the Juvenals' failure to give it notice separate from the notice to the City prejudiced the Authority's rights in any way. We note that the City and the Authority were represented by the same counsel. Under the City's municipal ordinances, the City's Board of Trustees oversees the operations of the Authority. An employee of the Authority testified that the public views Authority employees as City employees. These circumstances convince us, and we hold, that the Juvenals' notice to the City sufficiently apprised the Authority of the Juvenals' claim to constitute substantial compliance with § 156.B of the Act.

(90) days of the date the loss occurs.... A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

## II.

■ We turn now to the Juvenals' contention that they were denied a fair trial because the trial court applied and instructed upon the wrong standard of care. The Juvenals claim that the cumulative effect of the erroneous instructions was the denial of a fair trial.

■ The jury returned a verdict against the Juvenals. Consequently, we will presume that the verdict is correct. We will not disturb the verdict if there is any competent evidence to support it. *McCoy v. Oklahoma Farm Bureau,* 841 P.2d 568 (Okla.1992).

■ The best guide to determine if a party was prejudiced by erroneous instructions is to look at whether the verdict is supported by competent evidence. *Teague v. United Truck Service,* 499 P.2d 380, 384 (Okla.1972). If competent evidence supports the verdict, we will not disturb it because of erroneous instructions *"unless it appears reasonably certain* that the jury was misled." [Emphasis as in the original.] *Teague,* 499 P.2d at 384; *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121, 129 (Okla.1984).

The Juvenals complain of the trial court's Instruction 20, which told the jury that it should find for the Schools and the Authority if they "acted in conformity with then current recognized standards."[2]

The Juvenals claim that the trial court's Instruction 20 violated this Court's holdings in *Rotramel v. Public Service Co.,* 546 P.2d 1015 (Okla.1976), and *Woodis v. Oklahoma Gas & Electric Co.,* 704 P.2d 483 (Okla.1985). We disagree.

In neither *Rotramel* nor *Woodis* was the defendant a governmental entity. Here, both School and the Authority are governmental subdivisions. The Governmental Tort Claims Act, 51 O.S.1991 §§ 151 et seq., therefore, governs their liability. The Act creates different standards for municipally owned electric utilities than the common law standards by which the liability of privately owned electric utilities is measured.

■ Proof by a privately owned electric utility that it has complied with the National Electrical Code and the National Electrical Safety Code is not a complete defense to tort liability. *Woodis,* 704 P.2d at 486. On the other hand, under § 152.1 of the Act, the Schools and the Authority are immune from tort liability except "to the extent and in the manner provided in this act."[3] Section 155.28 of the Act expressly exempts governmental entities from liability for "acts or omissions done in conformance with then current recognized standards."[4] Thus, if a government owned public utility acts "in conformance with then current recognized standards," § 155.28, Id., this fact forms a complete defense to liability arising from such acts.

Here, the evidence established that the standards governing the electrical service were the National Electrical Code and the National Electrical Safety Code, and the trial court so instructed. The Juvenals claim that the Codes imposed obligations upon the defendants but were not standards. We believe this is a distinction without a difference. The trial court correctly held that the Codes

---

**2.** Instruction 20 reads:

If you find that the Defendants, Independent School District No. I–9 or the Okeene Public Works Authority, acted in conformity with then current recognized standards, then you must find for Defendants and against Plaintiffs.

In other words, if you find that the Defendants' actions regarding the electrical lines servicing the school building were at least in accordance with the then current recognized applicable professional and industry standards, then you must find for Defendants and against Plaintiffs.

**3.** 51 O.S.1991 § 152.1 provides:

A. The state of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employ-

ees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.

**4.** 51 O.S.1991 § 155.28 provides:

The state or a political subdivision shall not be liable if a loss or claim results from:

28. Acts or omissions done in conformance with then current recognized standards.

were standards and properly gave Instruction 20, note 2, Id. There was evidence from which the jury could have found that the defendants complied with the Codes.

The Juvenals complain of the trial court's refusal to give other requested instructions, including the Juvenals' version of their contentions. We have compared the Juvenals' requested instructions to those given by the trial court. We find nothing to convince us that the failure of the trial court to give the Juvenals' requested instructions makes it appear "reasonably certain that the jury was misled." *Teague*, Id. 499 P.2d at 384.

The problem the Juvenals have with the trial court's instructions appears to stem not from any fundamental misapplication of the law by the trial court, but from the exemptions granted to the defendants under the Governmental Tort Claims Act. For example, the Juvenals' Requested Instruction 20 would have told the jury that the Codes were "minimum standards" so that complying with them "would excuse the additional duty to exercise ordinary care." [5] The Juvenals' Requested Instruction 20 misstates the law applicable to this case because it is contrary to the express language of § 155.28 of the Governmental Tort Claims Act, Id. Note 2.

The jury's verdict is supported by the evidence. We find nothing in the instructions showing a probability that the jury was misled to the Juvenals detriment. The Juvenals presented their theories to the jury. That the jury chose to reject their theories does not entitle the Juvenals to a new trial.

■ The Juvenals contend that because several of their requested instructions were Oklahoma Uniform Jury Instructions, the trial court's failure to give them constituted reversible error. We disagree.

The trial court refused to give certain OUJI instructions, which the Juvenals contend constituted reversible error, under 12 O.S.1991 § 577.2. The OUJI instructions about which the Juvenals complain dealt with the definition of negligence. Section 577.2 requires that the trial court give OUJI instructions "unless the court determines that it does not accurately state the law." The trial court, however, did give other instructions, which apprised the jury of the concept of duty, causation and damages. The Juvenals were not prejudiced by the failure to give their requested instruction on this issue.

The trial court's refusal to give the OUJI instruction defining negligence was not reversible error. This was not a negligence case. Instead, it was a common law premises liability case. This Court has carefully distinguished general negligence from premises liability. In *Sutherland v. Saint Francis Hospital, Inc.*, 595 P.2d 780, 781–82 [1979], we held that the plaintiff in a premises liability case was not entitled to rely on principles of general negligence too. We said, "The common law has never seen fit to extend its principles of general negligence (as they came to be fashioned in the last century) to govern harm occasioned on the premises of others.... The common law approach has continued to command our unswerving commitment." The trial court comprehensively instructed on the law of premises liability. The Juvenal's did not except to any of the trial court's instructions on this issue. The Juvenals were not entitled to an instruction on general negligence, as general negligence was not an issue in this case. Thus, the trial court did not err in refusing to instruct on general negligence.

■ Where, as is the case here, appellants can point to no prejudice arising from erroneous instructions, either given or refused, we will not disturb the judgment. 20 O.S.1991 § 3001.1.[6] We construed § 3001.1 in *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d

---

**5.** Plaintiff's Requested Instruction 20 reads:

The standards contained in the National Electric Code or National Electric Safety Code are minimum standards. Therefore, compliance with those standards, even if you should find the defendants did comply, would not excuse the additional duty to exercise ordinary care.

**6.** 20 O.S.1991 § 3001.1 states in material part:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury ... unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

187, 191–92 (Okla.1992). In *Dutsch* we found that the instructions as a whole adequately instructed the jury concerning an issue dealt with in a requested instruction, which the trial court refused to give. We said, "we do not find that the instructions as a whole 'probably resulted in a miscarriage of justice.' 20 O.S.1991 § 3001.1." The *Dutsch* language applies here. The Juvenals were not prejudiced by the trial court's refusal to give the OUJI definition of negligence. Thus, there was no miscarriage of justice, nor were the Juvenals' "constitutional or statutory rights" violated.

▬▬ The language in 12 O.S.1991 § 577.2, requiring trial courts to give OUJI instructions that accurately state the law, must be interpreted in *pari materia* with § 3001.1. Construing these statutes together requires the conclusion that, although the trial court's failure to give the OUJI instructions defining negligence instructions was a technical error, it was not grounds for reversal. In *Smallwood v. State,* 763 P.2d 142, 144 (Okl.Cr.1988) the Court of Criminal Appeals held that although the failure to give OUJI instructions is technically an error, where the instructions given "fairly and accurately state the applicable law, ... the error [is] utterly harmless ..." We adopt this language and find that the trial court's refusal to give the OUJI instructions was, at most, harmless error.

### III.

▬▬ The Juvenals claim that the trial court erred in not directing a verdict in their favor against the Schools. In deciding whether a motion for directed verdict was properly denied we consider as true all evidence favorable to the Schools and disregard all evidence favorable to the Juvenals. *Downing v. First Bank in Claremore,* 756 P.2d 1227 (Okla.1988).

▬▬ The Juvenals contend that, as a matter of law, the Schools were on notice of a dangerous condition because their Superintendent knew a child had fallen several months before, and the electrical service vio-

lated the safety Codes. The evidence, however, conflicted on these issues.

The Schools proved that in the thirty-five years their school building had been used *no* child had ever been hurt similarly to the Juvenal accident before the accident the previous year involving the other child. Whether the Schools were on notice of a dangerous condition under these circumstances was a question of fact, which the trial court properly submitted to the jury. There was also evidence to support a finding that the electrical service was not too low and complied with the Codes. The trial court correctly submitted this issue to the jury. The trial court, therefore, properly denied the Juvenals motion for directed verdict against the Schools.

### IV.

▬▬ The Juvenals contend that the trial court erred in directing a verdict for the City. In what way this was prejudicial to them the Juvenals do not explain. Their contentions against the City and the Authority were identical. Thus, the jury considered all the Juvenals' theories of liability against the City in considering the Juvenals' case against the Authority. The jury's finding in the Authority's favor shows that the Juvenals were not prejudiced by the directed verdict the trial court granted to the City. We will not consider a claimed error that did not prejudice the appellants.

### V.

▬▬ The Juvenals complain of the trial court's refusal to allow them to prove that the service was raised after Brandy Juvenal's fall. The Oklahoma Evidence Code, 12 O.S. 1991 § 2104.A Provides:

Error may not be predicated upon a ruling which admits or excludes evidence *unless a substantial right of a party is affected* ... [Emphasis added.]

Further, § 2407 of the evidence code prohibits proof of repairs made subsequent to an accident if offered to prove negligence in connection with the accident.[7] The trial

7. 12 O.S.1991 § 2407 provides:

When, after an event, measures are taken which, if taken previously, would have made the

court excluded photographs of the service taken after it was raised, following Brandy Juvenal's fall. Nevertheless, the trial court allowed plaintiff to introduce much evidence on this score. The jury heard detailed testimony about the Schools' intention to raise the wiring before Brandy's fall. Wayne Carter, the electrician who did the repair work, testified that he raised the service after Brandy fell. We see nothing prejudicial in the exclusion of additional evidence on this issue. Such additional evidence would have been cumulative. Excluding it was within the discretion of the trial court.

## VI.

The Juvenals complain that the trial court improperly instructed the jury on 12 O.S.1991 § 109. Under § 109, no action to recover damages in tort for wrongful design or construction of an improvement to real property may be brought "more than ten (10) years after substantial completion of the project."[8] According to the Juvenals, the Schools were not entitled to the benefit of such an instruction because the Juvenals' cause of action against the Schools was based on the Schools' failure to correct a known dangerous condition. We disagree.

At a hearing on the day trial began, the Schools urged the trial court to eliminate any claim the Juvenals might make before the jury of insufficiency in the design of the Schools' wiring because it was undisputed that the electric service at the grade school had not been changed for far more than ten years before Brandy Juvenal fell. Thus, said the Schools, any claim for design insufficiency was bared by § 109. In response, counsel for the Juvenals took the position that the applicability of § 109 "is a question of fact:

event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This section does not require the exclusion of evidence of subsequent measures when offered for another purpose including proof of ownership, control, impeachment, or feasibility of precautionary measures where controverted.

8.  12 O.S.1991 § 109 provides:

No action in tort to recover damages
   (i) for any deficiency in the design, planning, supervision or observation of construction or

Has there within [been?] a change or improvement within ten years." Then, the Juvenals' counsel said that the Juvenals' claim against the Schools "goes to design as well as failure to maintain." If defective design was not part of the Juvenals' theory of the case they need only have said so. Instead, they said that defective design was a part of their claim. The trial court properly instructed the jury on § 109.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

LAVENDER, V.C.J., and SIMMS, HARGRAVE and OPALA, JJ., concur.

HODGES, C.J., ALMA WILSON, KAUGER and SUMMERS, JJ., concur in part, dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part;

In a trial where the injured plaintiff will win or lose depending on whether the jury finds her injuries were due to the alleged negligence of the defendant, the trial court must give the jury some basic instructions on the law of negligence. Because no such instructions were given here I would reverse the judgment for the Okeene Public Schools and Okeene Public Works Authority, and remand for a new trial.

The instructions not given to the jury appear in the Oklahoma Uniform Jury Instructions booklet as numbers 9.1 and 9.2, and are as follows:

construction of an improvement to real property,
   (ii) for injury to property, real or personal, arising out of any such deficiency, or
   (iii) for injury to the person or for wrongful death arising out of any such deficiency,
shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

## NEGLIGENCE—ELEMENTS OF LIABILITY

A party claiming damages has the burden of proving each of the following propositions:

First, that he has sustained injury;

Second, that the party from whom he seeks to recover was negligent;

And, third, that such negligence was a direct cause of the injury sustained by the claiming party.

## NEGLIGENCE DEFINED

Since this lawsuit is based on the theory of negligence, you must understand what the terms "negligence" and "ordinary care" mean in the law with reference to this case.

"Negligence" is the failure to exercise ordinary care to avoid injury to another's person or property. "Ordinary care" is the care which a reasonably careful person would use under the same or similar circumstances. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide. Thus, under the facts in evidence in this case, if a party failed to do something which a reasonably careful person would do, or did something which a reasonably careful person would not do, such party would be negligent.

These instructions had been requested by the plaintiff,[1] by the defendant School District, and by the defendant Public Works Authority. There is no explanation in the record for the trial court's failure to give them. It was likely an oversight. The majority holds that these negligence instructions were not required for two reasons: (1) because "this was not a negligence case", but a "common law premises liability case," and (2) because the instructions were adequate and Juvenal could not prove prejudice. I disagree with both conclusions.

As support for its first assertion, the majority cites *Sutherland v. St. Francis Hospital*, 595 P.2d 780 (Okla.1979) for the idea that premises liability is not based on the theory of negligence. That is not the holding of *Sutherland*, nor is it in line with the overwhelming majority of cases issued by this and other courts.[2] The first sentence of *Sutherland* states that it was a "negligent-tort litigation, occasioned by an entrant's fall on hospital premises." *Sutherland* continues by pointing out that a landowner's liability for accidents on premises is based on negligence principles and depends on the status of the entrant.[3]

To prove a case in landowner liability, the plaintiff must show duty on the part of the landowner, a breach of the duty, causation and injury. The Restatement (Second) of Torts, Section 282, defines negligence to include harm which arises out of land ownership. The comments to this section specifically speak to the duties owed by landowners to avoid premises liability. *See* § 282, comment e. Our OUJI instructions and comments contemplate premises liability arising from negligence. *See* OUJI 11.10, regarding invitees on a defendant's premises and its

---

1. Plaintiffs' requested version of No. 9.2 also contained an additional sentence relating to the duty of care toward children.

2. *Stills v. Mayor*, 438 P.2d 477 (Okla.1968) (plaintiff sued building owner in negligence); *Henryetta Constr. Co. v. Harris*, 408 P.2d 522 (Okla.1965) (plaintiff sued construction company for negligence in leaving a drainage inlet uncovered during construction); *St. Louis–San Francisco Ry. Co. v. Witty*, 327 P.2d 453 (Okla.1958) (plaintiff sued railroad in negligence for the accident which occurred on railroad track). *See also Maxymow v. Lake Maggiore Baptist Church*, 212 So.2d 792 (Fla.App.1968) (plaintiff sued for negligence in the maintenance of a canopy on a building); *Crosby v. Savannah Elec. & Power*, 114 Ga.App. 193, 150 S.E.2d 563 (1966) (plaintiff sued in negligence for the failure to insulate an electrical wire on the premises); *Coleman v. Baker*, 382 S.W.2d 843 (Ky.1964) (shop owner sued for negligence in the maintenance of his premises); *Miller v. Miller*, 373 Mich. 519, 129 N.W.2d 885 (1964) (social guest sued on the theory of negligence for a slip and fall accident); *Richey v. Kemper*, 392 S.W.2d 266 (Mo.1965) (landowner sued in negligent for failure to upkeep property); *Felix v. O'Brien*, 413 Pa. 613, 199 A.2d 128 (1964) (plaintiff sued homeowner for the failure to warn of a danger on the premises); *Wolf v. Des Moines Elevator Co.*, 126 Iowa 659, 98 N.W. 301 (1905); *Fort Wayne Copperage Co. v. Page*, 170 Ind. 585, 84 N.E. 145 (1908).

3. In *The American Law of Torts*, Volume 3, § 14.3, the authors state that *Sutherland* held that negligence principles apply within the restrictions of status-based duties. In other words, the standards of care vary depending on the status of the victim.

*Notes on Use,* which cite as an example a slip and fall case, and require that instructions *9.1, 9.2* and 9.6 dealing with negligence be given. Professor Prosser, in *The Law of Torts* (5th Ed.1984), states that a landowner may be held liable under only three theories: (1) nuisance, (2) strict liability and (3) negligence. He goes on to say it is this last category—simple negligence—which covers the majority of premises liability lawsuits. Here, Juvenal did not assert strict liability or nuisance. Her claim was based on the negligent maintenance of the premises. In her amended petition, she claimed that injury occurred "[a]s a result of the negligence of the defendants." O.R. at 86. It is clear that although plaintiff's injuries occurred on the premises of the defendant, the theory under which she sought recovery was negligence, the basic legal concepts of which were never explained to the jury.

Jury instructions are given to guide the jury regarding the applicable law during its deliberations. *See Midland Valley R. Co. v. Pettie,* 196 Okl. 52, 162 P.2d 543, 546 (1945). They are meant to help the jury understand their duty of analyzing the evidence in light of the controlling law. *Id.* The instructions need not be ideal, but they must fairly and accurately apprise the jury of the law governing the controversy. *Dutsch v. Sea Ray Boats, Inc.,* 845 P.2d 187, 189 (Okla.1992); *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121 (Okla.1984).

Defects in jury instructions generally take one of four forms: (1) the instruction incorrectly states the applicable law, (2) the instructions are confusing or conflicting, (3) the instruction, although legally correct, is not factually applicable, or (4) an applicable and needed instruction is not given. *See Midland Valley R. Co. v. Pettie,* 196 Okl. 52, 162 P.2d 543, 546 (1945) (reversible error to give an instruction which incorrectly stated the law); *City of Ardmore v. Hendrix,* 348 P.2d 497, 501 (Okla.1960) (reversible error to give two instructions that were in conflict with one another); *Woolfolk v. Semrod,* 351 P.2d 742, 744 (Okla.1960) (reversible error to give an instruction which was not supported by the evidence); *McFarland v. Crabtree,* 331 P.2d 379, 382 (Okla.1958) (reversible error to fail to give an instruction on contributory negligence since it was a critical issue presented by the defendant). It is the fourth category, an act of omission on the part of the court, which is presented in this case.

In *Reinhart & Donovan Co. v. Williamson,* 191 Okl. 539, 131 P.2d 765, 766–67 (1942) we stated the two things that could constitute reversible error in the giving of jury instructions:

The test of reversible error in connection with an instruction given is whether or not the jury were misled so that they reached a different result than they would have reached but for the error, *or* whether there is a serious misdirection in the charge, *excluding from the consideration of the jury an issue properly in the case.*

(Emphasis Added). If the instructions, either by way of commission or omission, deprive a party of a substantial right, the error is reversible. *Winn v. Corey,* 179 Okl. 305, 65 P.2d 522, 525 (1937). Failing to instruct on a vital issue in the case amounts to a violation of a substantial right. *Id.*

It has long been the rule that the trial court must instruct on the primary issues in the case, and that failure to do so is reversible error. *McFarland,* 331 P.2d at 382; *Roadway Express Inc. v. Baty,* 189 Okl. 180, 114 P.2d 935, 938 (1941).[4] The trial court has a duty to instruct on the decisive issues raised by the pleadings and the evidence. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 915 (Okla.1982). This rule is consistent with the function of jury instructions as well as the concept of fairness. *See Oklahoma Trans. Co. v. Green,* 344 P.2d 660 (Okla. 1959); *Garner v. Myers,* 318 P.2d 410 (Okla. 1957). The plaintiff has a right to have his or her theories of recovery presented to the jury; the defendant has a similar right with regard to defenses. *Timmons v. Royal*

---

4. See also *Smicklas v. Spitz,* 846 P.2d 362 (Okla. 1992); *Young v. First State Bank,* 628 P.2d 707 (Okla.1981); *Phillips v. Barker,* 269 P.2d 337 (Okla.1954); *Pechacek v. Hightower,* 269 P.2d 342 (Okla.1954); *Evlo Refining & Marketing Co.* *v. Moore,* 192 Okl. 576, 137 P.2d 911 (1943); *City of Altus v. Martin,* 185 Okl. 446, 94 P.2d 1 (1939); *Liberty Nat'l Bank of Weatherford v. Semkoff,* 184 Okl. 18, 84 P.2d 438 (1938A).

*Globe Ins. Co., supra,* at 915; *Garner v. Myers, supra,* at 414. As stated in *Williamson,* excluding a critical issue from the jury's consideration is reversible error.·

In *Garner,* 318 P.2d at 414, and *Green,* 344 P.2d at 665, new trials were granted because the trial court failed to instruct on critical theories in the case. The "failure of the trial court to instruct the jury on his own initiative with reference to said fundamental issue was prejudicial error." *Green,* 344 P.2d at 665. In *Green,* we continued by stating that when the a specific defense is pleaded and evidence is introduced to support the defense, the defendant is entitled to the instruction explaining to the jury the legal elements of the defense. *Id.* at 664–5.

In *McKee v. Neilson,* 444 P.2d 194 (Okla. 1968) and *McFarland v. Crabtree, supra,* we affirmed the general rule that critical issues must be presented to the jury. *Id.* at 199. In those cases the trial court failed to instruct on contributory negligence. We agreed that such instruction was necessary because it was a "fundamental issue" in the case. *McKee,* 444 P.2d at 199.[5] Both cases required a new trial.

In *Sellars v. McCullough,* 784 P.2d 1060, 1062 (Okla.1989) we commented that if fundamental error occurred the appellate court would reverse even if the appealing party had not objected to prevent it:

> The trial court's duty is to state the law correctly, but not to frame the issues. If the nisi prius judge does not accurately state the law, "fundamental error" occurs, which is reviewable even if no exception has been taken.

Here we need not invoke the fundamental error doctrine to review the matter. Plaintiff, in requesting the instructions, objecting at trial to their not being given, raising the issue on appeal and again on certiorari, has amply protected her record for review. Fur-

thermore, in *Thomas v. Gilliam,* 774 P.2d 462, 465 (1989), we held that the giving of applicable OUJI instructions was mandatory. Failure to use the uniform instruction without appropriate explanation is error. *Id.* at 466.

In the present case the facts were in dispute. Juvenal claimed that she fell from the building when she was shocked by a wire; the defendants alleged that she simply fell. Juvenal offered evidence which indicated that the school knew of the wire and had done nothing to prevent injury to school children. The defendants offered evidence to prove that the wiring met professional standards. "Because the facts are in dispute, the jury instructions are especially important so the trier of fact has an accurate understanding of the applicable law and can apply that law to the facts it finds the evidence supports." *Cimarron Feeders v. Tri–County Elec. Coop,* 818 P.2d 901, 902 (Okla.1991) citing *Bechard v. Concrete Mix & Const., Inc.,* 218 Kan. 597, 545 P.2d 334 (1976).

The defendants urge that the error does not require reversal because plaintiff has not shown prejudice. Citing the general rule that erroneous instructions do not require reversal unless the opposing party was prejudiced, the defendants claim that any error was harmless. Again I must disagree. In those cases dealing with the trial court's failure to instruct on a critical issue, we do not require an independent showing of prejudice. *See McFarland v. Crabtree,* 331 P.2d at 382; *Liberty Nat'l Bank v. Semkoff,* 184 Okl. 18, 84 P.2d 438 (1938). The *Williamson* test is satisfied if either (1) the jury is so misled that they probably reached a different result or (2) an issue properly in the case has been excluded from the jury's consideration by failure to instruct on it. *Williamson, supra* 191 Okl. 539, 131 P.2d at 766, 767. Rather than following the ruling in *William-*

---

5. We have also reversed and remanded for a new trial for the failure to instruct on critical issues in *Cunningham v. Charles Pfizer & Co.,* 532 P.2d 1377 (Okla.1975) (fundamental error for the trial court to fail to give instructions on causation in a products liability case); *Pacific Ins. Co. v. Frank,* 452 P.2d 794 (Okla.1969) (fundamental error for the trial court to fail to give an instruction dealing with the defendant's theory of arson); *Linde-*

*mann v. Randolph,* 414 P.2d 257 (Okla.1966) (failure to instruct on a vital defense presented by defendant even though there was conflicting evidence was fundamental and reversible error); *Subscribers At Cas. Reciprocal Exch. v. Sims,* 293 P.2d 578 (Okla.1956) (the absence of an instruction dealing with "right of way" was "fatal" error requiring reversal).

*son,* the majority holds that there must always be a showing of prejudice. As authority, *Dutsch v. Sea Ray Boats, Inc.,* 845 P.2d 187 (Okla.1992) is cited. But *Dutsch* did not deal with a situation where the entire theory of recovery was omitted from the jury's consideration. In *Dutsch* we were faced with the question of whether the instructions adequately presented the defense of the defendants. We held that they did. Unlike *Dutsch,* here the plaintiff's theory of recovery was not given to the jury. Contrary to the majority's position, *Dutsch* did not require a showing of prejudice for a theory wholly omitted by the instructions.

Prejudice is implicit when a party's basis for recovery or defense is not explained to the jury. The court gave a one line instruction defining "ordinary care", another defining "direct cause," and a third explaining Brandy's incapacity for negligence due to her age. But the jury was not told of the consequences of the lack of "ordinary care", or what "direct cause" had to do with the case, or even what "negligence" was in the eyes of the law. In other words, the plaintiff's theory on which she sought to recover was never explained. No other showing of prejudice need be demonstrated. I would reverse and remand as to the defendants Okeene Public Schools and Okeene Public Works Authority.

I concur in the Court's affirmance of the directed verdict for the City of Okeene.

I am authorized to state that Chief Justice HODGES, Justice WILSON and Justice KAUGER join in these views.